M.P.M. Builders, LLC vs. Leslie Dwyer.[1]

Suffolk. April 8, 2004. - June 15, 2004.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Sosman, & Cordy, JJ.

*Practice, Civil,* Summary judgment. *Easement. Real Property,* Easement.

This court adopted Restatement (Third) of Property (Servitudes) § 4.8(3) (2000) and concluded that the owner of a servient estate may, at the owner's expense, change the location of an easement without the consent of the easement holder, except where such relocation significantly lessens the utility of the easement, increases the burdens on the easement holder's use and enjoyment of the easement, or frustrates the purpose for which the easement was created. [89-94]

Civil action commenced in the Land Court Department on December 5, 2002.

The case was heard by *Charles W. Trombly,* J., on a motion for summary judgment.

The Supreme Judicial Court granted an application for direct appellate review.

*Robert S. Mangiaratti (Judith S. Yogman* with him) for the plaintiff.

*Edmund J. Brennan, Jr. (Michael J. Polak* with him) for the defendant.

The following submitted briefs for amici curiae:

*Edward M. Bloom* for Real Estate Bar Association for Massachusetts & another.

*William V. Hovey,* pro se.

*Thomas F. Reilly,* Attorney General, & *Joseph Callanan,* Assistant Attorney General, for the Attorney General.

Cowin, J. We are asked to decide whether the owner of a servient estate may change the location of an easement without the

---

[1]We acknowledge the amicus briefs filed by the Attorney General; the Real Estate Bar Association for Massachusetts and The Abstract Club; and William V. Hovey.

consent of the easement holder.[2] We conclude that, subject to certain limitations, described below, the servient estate owner may do so.

1. *Facts.* The essential facts are not in dispute. The defendant, Leslie Dwyer, owns a parcel of land in Raynham abutting property owned by the plaintiff, M.P.M. Builders, L.L.C. (M.P.M.). Dwyer purchased his parcel in 1941, and, in the deed, he was also conveyed an easement, a "right of way along the cartway to Pine Street," across M.P.M.'s land. The cartway branches so that it provides Dwyer access to his property at three separate points.[3] The deed describes the location of the easement and contains no language concerning its relocation.

In July, 2002, M.P.M. received municipal approval for a plan to subdivide and develop its property into seven house lots. Because Dwyer's easement cuts across and interferes with construction on three of M.P.M.'s planned lots, M.P.M. offered to construct two new access easements to Dwyer's property. The proposed easements would continue to provide unrestricted access from the public street (Pine Street) to Dwyer's parcel in the same general areas as the existing cartway. The relocation of the easement would allow unimpeded construction by M.P.M. on its three house lots. M.P.M. has agreed to clear and construct the new access ways, at its own expense, so "that they are as convenient [for the defendant] as the existing cartway[]." Dwyer objected to the proposed easement relocation, "preferring to maintain [his] right of way in the same place that it has been and has been used by [him] for the past 62 years."

2. *Procedural history.* M.P.M. sought a declaration, pursuant to G. L. c. 231A, that it has a right unilaterally to relocate Dwyer's easement. When M.P.M. moved for summary judgment, a Land Court judge found that there were no material issues of fact in dispute, denied M.P.M.'s motion for summary judgment,

---

[2]A servient estate is an estate burdened by an easement (here M.P.M.'s property). A dominant estate is an estate that benefits from an easement (here Dwyer's property). See Black's Law Dictionary 567, 569 (7th ed. 1999). The owner of the dominant estate is the easement holder.

[3]Although the deed describes the right of way along a single cartway, the judge and the parties characterize the easement as being along the "cartways" or "cartpaths," presumably because the cartway splits into three separate branches. We use the term "cartway," as used in the deed.

entered summary judgment against M.P.M., and dismissed the case.

The judge recognized that this case was "a clear example of an increasingly common situation where a dominant tenant is able to block development on the servient land because of the common-law rule which . . . may well be the result of unreflective repetition of a misapplied rationale." He noted that the rule conflicts with the "right of a servient tenant to use his land in any lawful manner that does not interfere with the purpose of the easement." Nevertheless, he concluded that under the "settled" common law, once the location of an easement has been fixed it cannot be changed except by agreement of the estate owners. The judge concluded that, unless this court decides "to dispel the uncertainty that now exists and adapt the common law to present-day circumstances," he was bound to apply the law currently in effect. We granted M.P.M.'s application for direct appellate review to decide whether our law should permit the owner of a servient estate to change the location of an easement without the easement holder's consent.

3. *Discussion.* M.P.M. contends that summary judgment was erroneously entered for Dwyer. Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to judgment as a matter of law. Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). See *Herbert A. Sullivan, Inc.* v. *Utica Mut. Ins. Co.*, 439 Mass. 387, 393-394 (2003). "Summary judgment, when appropriate, may be rendered against the moving party." Mass. R. Civ. P. 56 (c). See *Perseus of N.E., MA, Inc.* v. *Commonwealth*, 429 Mass. 163, 168 (1999). "An order granting or denying summary judgment will be upheld if the trial judge ruled on undisputed material facts and his ruling was correct as a matter of law." *Route One Liquors, Inc.* v. *Secretary of Admin. & Fin.*, 439 Mass. 111, 115 (2003), quoting *Commonwealth* v. *One 1987 Mercury Cougar Auto.*, 413 Mass. 534, 536 (1992).

The parties disagree whether our common law permits the servient estate owner to relocate an easement without the easement holder's consent. Dwyer, citing language in our cases, contends that, once the location of an easement has been

defined, it cannot be changed except by agreement of the parties. See, e.g., *Anderson* v. *DeVries*, 326 Mass. 127, 132 (1950); *Davis* v. *Sikes*, 254 Mass. 540, 546 (1926); *Bannon* v. *Angier*, 2 Allen 128, 129 (1861). On the other hand, relying principally on the Appeals Court's decision in *Lowell* v. *Piper*, 31 Mass. App. Ct. 225 (1991), M.P.M. claims that our common law permits the servient estate owner to relocate an easement as long as such relocation would not materially increase the cost of, or inconvenience to, the easement holder's use of the easement for its intended purpose. M.P.M. urges us to clarify the law by expressly adopting the modern rule proposed by the American Law Institute in the Restatement (Third) of Property (Servitudes) § 4.8 (3) (2000).

This section provides that:

> "Unless expressly denied by the terms of an easement, as defined in § 1.2, the owner of the servient estate is entitled to make reasonable changes in the location or dimensions of an easement, at the servient owner's expense, to permit normal use or development of the servient estate, but only if the changes do not (a) significantly lessen the utility of the easement, (b) increase the burdens on the owner of the easement in its use and enjoyment, or (c) frustrate the purpose for which the easement was created."

Section 4.8 (3) is a default rule, to apply only in the absence of an express prohibition against relocation in the instrument creating the easement and only to changes made by the servient, not the dominant, estate owner.[4] *Id.* It "is designed to permit development of the servient estate to the extent it can be accomplished without unduly interfering with the legitimate interests of the easement holder." *Id.* at comment f, at 563. Section 4.8 (3) maximizes the over-all property utility by increas-

---

[4] We previously have concluded that the dominant estate owner, that is, the easement holder, may not unilaterally relocate an easement. See *Kesseler* v. *Bowditch*, 223 Mass. 265, 269-270 (1916); *Jennison* v. *Walker*, 11 Gray 423, 426 (1858). According to the Restatement, many jurisdictions have erroneously expanded that sensible restriction into one that prevents the owner of the servient estate from relocating the easement without the consent of the easement holder. Restatement (Third) of Property (Servitudes) § 4.8 (3) comment f, at 563 (2000).

ing the value of the servient estate without diminishing the value of the dominant estate; minimizes the cost associated with an easement by reducing the risk that the easement will prevent future beneficial development of the servient estate; and encourages the use of easements. See *id.*; *Roaring Fork Club, L.P.* v. *St. Jude's Co.*, 36 P.3d 1229, 1236 (Colo. 2001). Regardless of what heretofore has been the common law, we conclude that § 4.8 (3) of the Restatement is a sensible development in the law and now adopt it as the law of the Commonwealth.

We are persuaded that § 4.8 (3) strikes an appropriate balance between the interests of the respective estate owners by permitting the servient owner to develop his land without unreasonably interfering with the easement holder's rights. The rule permits the servient owner to relocate the easement subject to the stated limitations as a "fair tradeoff for the vulnerability of the servient estate to increased use of the easement to accommodate changes in technology and development of the dominant estate." Restatement (Third) of Property (Servitudes), *supra* at comment f, at 563. Therefore, under § 4.8 (3), the owner of the servient estate is "able to make the fullest use of his or her property allowed by law, subject only to the requirement that he or she not damage other vested rights holders." *Roaring Fork Club, L.P.* v. *St. Jude's Co.*, *supra* at 1237.

It is a long-established rule in the Commonwealth that the owner of real estate may make any and all beneficial uses of his property consistent with the easement. See *Gerrish* v. *Shattuck*, 132 Mass. 235, 238 (1882); *Atkins* v. *Bordman*, 2 Met. 457, 467 (1841); *Western Mass. Elec. Co.* v. *Sambo's of Mass., Inc.*, 8 Mass. App. Ct. 815, 818 (1979), and cases cited. These cases make clear that the rights of the owner of the easement are protected notwithstanding changes made by the servient estate owner as long as the purpose for which the easement was originally granted is preserved. See *VanBuskirk* v. *Diamond*, 316 Mass. 453, 462 (1944); *Dunham* v. *Dodge*, 235 Mass. 367, 372 (1920); *Johnson* v. *Kinnicutt*, 2 Cush. 153, 157-158 (1848). We conclude that § 4.8 (3) is consistent with these principles in its protection of the interests of the easement holder: a change may not significantly lessen the utility of the easement, increase the burden on the use and enjoyment by the owner of the ease-

ment, or frustrate the purpose for which the easement was created. The servient owner must bear the entire expense of the changes in the easement. See *Lewis* v. *Young*, 92 N.Y.2d 443, 452 (1998).

Dwyer urges us to reject the Restatement approach. He argues that adoption of § 4.8 (3) will devalue easements, create uncertainty in property interests, and lead to an increase in litigation over property rights.[5] Our adoption of § 4.8 (3) will neither devalue easements nor place property interests in an uncertain status. An easement is by definition a limited, nonpossessory interest in realty. See Restatement (Third) of Property (Servitudes) § 1.2 (2000) ("An easement creates a nonpossessory right to enter and use land in the possession of another and obligates the possessor not to interfere with the uses authorized by the easement"); 3 Powell, Real Property § 405 at 34-13 (P. Rohan ed. 1992) ("The requirement that the easement involve only a *limited* use or enjoyment of the servient tenement is a corollary of the nonpossessory character of the interest" [emphasis in original]). The owner of the servient estate is in possession of the estate burdened by the easement. An easement is created to serve a particular objective, not to grant the easement holder the power to veto other uses of the servient estate that do not interfere with that purpose.

---

[5]Dwyer correctly states that the majority of jurisdictions require mutual consent to change the location of an easement. See Restatement (Third) of Property (Servitudes), *supra* at comment f, at 563; Note, The Right of Owners of Servient Estates to Relocate Easements Unilaterally, 109 Harv. L. Rev. 1693, 1694 (1996). However, most of these decisions were issued prior to the publication of the Restatement (Third) of Property (Servitudes) (2000). See, e.g., *Davis* v. *Bruk*, 411 A.2d 660 (Me. 1980); *Sakansky* v. *Wein*, 86 N.H. 337 (1933); *Johnson* v. *Jaqui*, 27 N.J. Eq. 552 (1876); *Garraty* v. *Duffy*, 7 R.I. 476 (1863); *Moore* v. *Center*, 124 Vt. 277 (1964). Of the State appellate courts that have addressed the issue since § 4.8 (3) was drafted, four have adopted, or referred with approval to, the rule in some form. See *Roaring Fork Club, L.P.* v. *St. Jude's Co.*, 36 P.3d 1229, 1236, 1238 (Colo. 2001) (adopting rule but requiring declaratory judgment prior to relocation); *Lewis* v. *Young*, 92 N.Y.2d 443, 452 (1998) (adopting rule for easements not expressly defined in grant); *Goodwin* v. *Johnson*, 357 S.C. 49, 57-58 (Ct. App. 2003) (adopting Restatement position for easements by necessity); *Burkhart* v. *Lillehaug*, 664 N.W.2d 41, 43-44 (S.D. 2003) (applying Restatement § 4.8 [3] to changes made to easement). We have found only two State appellate courts that have expressly rejected it. See *Herren* v. *Pettengill*, 273 Ga. 122, 124 (2000); *MacMeekin* v. *Low Income Hous. Inst., Inc.*, 111 Wash. App. 188, 207 (2002).

The limitations embodied in § 4.8 (3) ensure a relocated easement will continue to serve the purpose for which it was created. So long as the easement continues to serve its intended purpose, reasonably altering the location of the easement does not destroy the value of it. For the same reason, a relocated easement is not any less certain as a property interest. The only uncertainty generated by § 4.8 (3) is in the easement's location. A rule that permits the easement holder to prevent any reasonable changes in the location of an easement would render an access easement virtually a possessory interest rather than what it is, merely a right of way. See *Lowell* v. *Piper*, 31 Mass. App. Ct. 225, 229 (1991). Finally, parties retain the freedom to contract for greater certainty as to the easement's location by incorporating consent requirements into their agreement.

"Clearly, the best course is for the [owners] to agree to alterations that would accommodate both parties' use of their respective properties to the fullest extent possible." *Roaring Fork Club, L.P.* v. *St. Jude's Co.*, *supra* at 1237. In some cases, the parties will be unable to reach a meeting of the minds on the location of an easement. In the absence of agreement between the owners of the dominant and servient estates concerning the relocation of an easement, the servient estate owner should seek a declaration from the court that the proposed changes meet the criteria in § 4.8 (3). See *id.* at 1237-1238. Such an action gives the servient owner an opportunity to demonstrate that relocation comports with the Restatement requirements and the dominant owner an opportunity to demonstrate that the proposed alterations will cause damage. *Id.* at 1238. The servient owner may not resort to self-help remedies, see *id.* at 1237 (after failing to reach agreement with easement holder, servient owner went forward with construction), and, as M.P.M. did here, should obtain a declaratory judgment before making any alterations.

Although Dwyer may be correct that increased litigation could result as a consequence of adopting § 4.8 (3), we do not reject desirable developments in the law solely because such developments may result in disputes spurring litigation. Section 4.8 (3) "imposes upon the easement holder the burden and risk of bringing suit against an unreasonable relocation," but this

"far surpasses in utility and fairness the traditional rule that left the servient land owner remediless against an unreasonable easement holder." *Roaring Fork Club, L.P.* v. *St. Jude's Co., supra* at 1237, quoting Note, Balancing the Equities: Is Missouri Adopting a Progressive Rule for Relocation of Easements?, 61 Mo. L. Rev. 1039, 1060 (1996). We trust that, over time, uncertainties will diminish and litigation will subside as easement holders realize that in some circumstances unilateral changes to an easement, paid for by the servient estate owner, will be enforced by courts. Dominant and servient estate owners will have an incentive to negotiate a result rather than having a court impose one on them. See *Lewis* v. *Young, supra* at 451-452.[6]

We return to the facts of this case. The Land Court judge ruled correctly under existing law. But we conclude that § 4.8 (3) of the *Restatement* best complies with present-day realities. The deed creating Dwyer's easement does not expressly prohibit relocation. Therefore, M.P.M. may relocate the easement at its own expense if the proposed change in location does not significantly lessen the utility of the easement, increase the burdens on Dwyer's use and enjoyment of the easement, or frustrate the purpose for which the easement was created. M.P.M. shall pay for all the costs of relocating the easement.

Because we cannot determine from the present record whether the proposed relocation of the easement meets the aforementioned criteria, we vacate the judgment and remand the case to the Land Court for further proceedings consistent with this opinion.

*So ordered.*

---

[6]In his amicus brief, the Attorney General asks that, should we adopt § 4.8 (3) of the *Restatement*, we carve an exception for public easements on a private party's land. We do not address this proposition as it is not an issue in this case.