The VILLAGE PINES AT The PINES OF GREENWOOD HOMEOWNERS' ASSOCIATION, INC., Appellant–Plaintiff,

v.

The PINES OF GREENWOOD HOME-OWNERS' ASSOCIATION, INC., Appellee–Defendant.

No. 41A01–0912–CV–568.

Court of Appeals of Indiana.

Nov. 17, 2010.

Thomas F. Bedsole, Maggie L. Smith, Matthew Parker Voors, Frost Brown

Todd, LLC, Indianapolis, IN, Attorneys for Appellant.

Scott A. Tanner, Tanner Law Group, Indianapolis, IN, Attorney for Appellee.

## OPINION

DARDEN, Judge.

The Village Pines at The Pines of Greenwood Homeowners' Association, Inc. ("VP–HOA") appeals the trial court's order on its complaint against The Pines of Greenwood Homeowners' Association, Inc. ("POG–HOA").

We reverse and remand.

### FACTUAL BACKGROUND

The City of Greenwood adopted Article 8 of its zoning ordinance, ("PUD Zoning Ordinance"), authorizing the zoning option of a Planned Unit Development ("PUD") "for placement of buildings on the land without adherence to the conventional lot-by-lot approach common to traditional subdivisions." (App.308). The ordinance defined a PUD as "an area of land, controlled by a landowner, to be developed as a single entity for a variety of dwelling units, and/or other uses, the plan for which does not correspond in lot size, bulk or type of dwelling, density, lot coverage, and required open space to the regulations established in any one zoning district,...." (App.309). The ordinance defined "Common Open Space" as "a parcel or parcels of land ... within the PUD site designed and intended for the use or enjoyment of the occupants," which "may contain such complimentary structures and improvements as are appropriate for the benefit and enjoyment of the occupants." *Id.* at 310.

Thereafter, the PUD Zoning Ordinance provided a number of general design requirements. One design requirement provided for "common property": "land, to-gether with the improvements thereon, the use and enjoyment of which are shared by the owners and occupants," with "satisfactory arrangements ... made for the improvement, operation, and maintenance of such common property and facilities" in the form of "an organization for the ownership and maintenance of ... common open space." (App.311). Another general design requirement of the PUD Zoning Ordinance was that there "shall be at least ten percent" of the gross PUD land area "for park and/or recreational purposes." *Id.* at 312. Yet another design requirement provided that there "s hall be established a Home Owners Association" to "provide for the control and maintenance of all common areas, recreation facilities or open spaces," with assessments against property within the PUD for their maintenance and operation. *Id.* at 313.

A developer proposed to develop approximately 105 acres of property as The Pines of Greenwood ("The Pines"), a PUD consisting of five communities with two types of homes and densities: three communities of The Pines of Greenwood ("POG"), with traditional single family homes; and two communities of The Village Pines ("VP"), with clustered low maintenance single family detached units.

The developer submitted the Master Plan for The Pines as a PUD, and the plan included the following:

*1.1 Overview.* The Planned United Development, known as The Pines (hereinafter "THE PINES") is proposed to consist of a series of integrated residential communities offering a variety of single family types and densities. Each residential community shall feature a coordinated landscaping theme, amenities, including open space/landscape areas, access to a pedestrian path and an

open space network available to all residents of THE PINES.

\*   \*   \*

*1.4 Open Spaces.* Throughout THE PINES, there will be a series of small rest area parks, landscape features and a hiking-jogging-biking path. The path shall be six feet (6') wide and shall be constructed according to applicable standards with final plans subject to approval of the Commission or its authorized representative. The path system shall provide a pedestrian linkage to various destinations throughout the area, including the ponds and park area. The rest area parks, landscape features and the hiking-jogging-biking path shall be maintained by a master homeowners association.

(App.64). The Master Plan for The Pines PUD contained no definitions of "s mall rest area park," "park area," or "rest area parks"; nor any definition or other reference to "a master homeowners association" or mention of "common areas." The Pines Master Plan was recorded on March 10, 1999, and approved by the Greenwood Common Council on March 15, 1999, in an ordinance that amended the city's zoning ordinance (hereafter, "Master Plan Ordinance").

Subsequently, on January 24, 2000, there were declarations of covenants and restrictions recorded (with attached legal descriptions and surveyor's diagrams)—one set for the POG communities, and one set for the VP communities. These recorded filings established separate homeowners' associations, one for the POG communities and one for the VP communities. The POG covenants provided that only POG property owners could use its "common areas," which it defined therein as "areas and all improvements located thereon set aside for recreation areas, swimming pool and related facilities ...," but they further provided that "the walking paths and tot playground" could be used by VP property owners. (App.70).[1]

During the development of The Pines, a swimming pool was constructed in a POG community neighborhood. Despite the reference in the Master Plan Ordinance to "a master homeowners association," no "master" homeowners' association was formed with respect to The Pines as a whole. (App.64).

On July 16, 2008, the VP–HOA filed a complaint seeking reformation, injunctive relief, and declaratory judgment. The VP–HOA sought reformation of the POG covenants, alleging they "mistakenly omitted a provision whereby the residents of [VP] would be permitted to use the community swimming pool" which was located in the POG area. *Id.* at 19.

The trial court held a bench trial on June 10, 2009. Counsel for the VP–HOA began by stating, "The main issue of contention between the parties ... at this point constitutes the use and operation of a swimming pool." (Tr. 4). The trial court heard testimony from only one witness, the attorney who had performed the legal work for the developer to obtain the PUD zoning and enactment of the Master Plan Ordinance—but he had not been involved in the drafting and recording of cove-

---

**1.** Subsequently, the provision for VP lot owners to be able to use the walking paths and playground was deleted by an amendment. The trial court ruled that such deletion could not stand, as the original POG covenants had "created rights" in VP lot owners to such use; therefore, the covenants in that regard "could not be amended to delete" those rights "as third party beneficiaries ... without the consent" of those third party beneficiaries. (App.14). Accordingly, the trial court found the amendment "null and void" and "vacated" it. *Id.* The parties present no challenge to this ruling within the trial court's order.

nants.[2] The additional evidence presented to the trial court consisted of the various documents as described above.

The parties' counsel agreed that no master homeowners association had ever been established for The Pines, and that no hiking-jogging-biking path was ever created. Counsel for the VP–HOA argued to the trial court that in order to reflect the controlling Master Plan Ordinance, it should order the creation of a master homeowners' association for maintenance and operation of the common areas—which would include the pool—and the reformation of the POG and VP covenants in that regard.

On November 5, 2009, the trial court issued its findings of fact, conclusions of law, and judgment. The trial court found that the documents reflecting the development of The Pines did not expressly require the creation of a master homeowners' association to control what the VP–HOA argued to constitute the common areas of The Pines.

The VP–HOA brought this appeal. On September 9, 2010, this court heard counsel's oral arguments on the appeal.[3]

### DECISION

We find the critical question to be: does the Master Plan Ordinance require that there be a master homeowners' association; and, if so, what areas of the PUD does it control? The answer must turn on the statutes—here, the PUD Zoning Ordinance and the Master Plan Ordinance.

■ Construing a zoning ordinance is a question of law. *600 Land, Inc. v. Metropolitan Bd. of Zoning Appeals of Marion County,* 889 N.E.2d 305, 309 (Ind.2008).

We review questions of law under a de novo standard and owe no deference to the trial court's conclusions. *Id.* Further, when interpreting an ordinance, we apply the same principles as those employed for construction of statutes. *Id.* Undefined words in an ordinance are given their plain, ordinary, and usual meaning. *Id.* In determining the plain and ordinary meaning of a term, we may consider its relationship with other words and phrases. *Id.* Further, "[s]tatutes relating to the same subject matter are in *pari material* [on the same subject] and should be construed together so as to produce a harmonious statutory scheme." *Klotz v. Hoyt,* 900 N.E.2d 1, 5 (Ind.2009).

■ First, the PUD Zoning Ordinance requires a home owners' association for the PUD. *See* App. 313 ("There shall be established a Home Owners Association [with governing directives] which provide for the control and maintenance of all common areas, recreation facilities, or open spaces. . . ."). Moreover, the Master Plan Ordinance states that "[t]he rest area parks, landscape features and the hiking-jogging-biking path shall be maintained by a master homeowners association." Hence, we find that by law, a master homeowners' association is required for The Pines.

■ Next, as to the responsibilities of the master homeowners' association for The Pines, we consider the provisions of the PUD Zoning Ordinance and the Master Plan Ordinance. As noted above, the PUD Zoning Ordinance contains provisions requiring that the PUD contain a minimum quantity of land "for park and/or recreational purposes"; that there be "common property" for the "shared use or

---

**2.** According to the VP–HOA's reply, the attorney who drafted the covenants is "now deceased." Reply at 1.

**3.** We commend counsel on their able advocacy.

enjoyment" of its "owners and occupants"; and that the PUD's homeowners' association "provide for the control and maintenance of all common areas, recreation facilities or open spaces." (App.312, 311, 313). The Master Plan Ordinance states The Pines "shall feature ... amenities, including open space/landscape areas, access to a pedestrian path and an open space network available to all residents of THE PINES," and subsequently refers in its "open spaces" provision to "park area." *Id.* at 64. We find that the meaning of the terms "amenities" and "park area" in the Master Plan Ordinance, though not defined therein, must result from considering their plain, ordinary and usual meanings together with the PUD Zoning Ordinance's requirements for a PUD to have open space for the shared recreation and enjoyment of its residents. Accordingly, we find that the swimming pool in The Pines is such an amenity or park area available as a recreation facility for all residents of The Pines, and it would be within the scope of the master homeowners' association's responsibilities to properly control, maintain and operate same, with assessments therefor against all property within The Pines.

With respect to other areas for which the master homeowners' association is responsible, we find that a similar analysis must apply. In other words, the PUD Zoning Ordinance and the Master Plan Ordinance must be read together in that regard.

We hold that as a matter of law, the trial court erred when it concluded that the controlling ordinances—the PUD Zoning Ordinance and the Master Plan Ordinance—did not require the creation of a master homeowners' association and for the shared use of amenities located in The Pines. Moreover, this error affects existing recorded covenants.

We note that *ab initio*, the VP–HOA has sought equitable relief. Consistent therewith, we find that in order for the governance of The Pines to proceed in accordance with the law, *i.e.*, by means of a master homeowners' association, equity requires that the parties engage in mediation.[4] The parties would work together to create governing documents for the master homeowners' association—with covenants as to both its management and its maintenance of The Pines' common areas and amenities, and its structure for the assessment and collection of fees therefor; said covenants would thereafter run with the land within The Pines. The parties would also mediate the corollary reformation of existing POG and VP covenants consistent with the foregoing. Therefore, we instruct the trial court to order the parties to engage in mediation accordingly.

Reversed and remanded.

BROWN, J., and BRADFORD, J., concur.

---

4. No mediation was previously ordered in this matter.