ATTORNEY FOR APPELLANT TOWN OF ELLETTSVILLE, INDIANA PLAN COMMISSION

Darla S. Brown
Sturgeon & Brown, P.C.
Bloomington, Indiana

ATTORNEYS FOR APPELLANT RICHLAND CONVENIENCE STORE PARTNERS, LLC

Andrew P. Sheff
Sheff Law Office
Indianapolis, Indiana

Carina M. de la Torre
The de la Torre Law Office LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Michael Rabinowitch
Maureen E. Ward
Wooden McLaughlin, LLP
Indianapolis, Indiana



FILED

May 25 2017, 8:30 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# COURT OF APPEALS OF INDIANA

Town of Ellettsville, Indiana Plan Commission and Richland Convenience Store Partners, LLC,

*Appellants-Respondents,*

v.

Joseph V. DeSpirito,

*Appellee-Petitioner*

May 25, 2017

Court of Appeals Case No.
53A01-1611-PL-2559

Appeal from the Monroe Circuit Court

The Honorable E. Michael Hoff, Judge

Trial Court Cause No.
53C01-1509-PL-1714

**Crone, Judge.**

## Case Summary

Richland Convenience Store Partners, LLC ("RCSP"), and Joseph V. DeSpirito own adjoining lots in an Ellettsville subdivision. RCSP filed a petition with the Town of Ellettsville Plan Commission to relocate a utility easement on RCSP's property, which contains a private sewer line that serves DeSpirito's optometry practice, and amend the subdivision plat accordingly. RCSP proposed to replace and relocate the sewer line at its own expense. The Plan Commission approved RCSP's petition over DeSpirito's objection. DeSpirito filed a petition for judicial review of the Plan Commission's decision. DeSpirito, RCSP, and the Plan Commission filed motions for summary judgment. The trial court granted DeSpirito's motion and denied the other motions, concluding that the Plan Commission erred in approving RCSP's petition because DeSpirito had not consented to the relocation of the easement.

The Plan Commission and RCSP now appeal, arguing that the trial court's conclusion is erroneous. We agree and therefore reverse and remand with instructions to enter summary judgment for the Plan Commission and RCSP.

## Facts and Procedural History

The relevant facts are undisputed. Swifty Oil ("Swifty") once owned the land now owned by RCSP and DeSpirito. In 1996, Swifty submitted a plat for the Hukill Subdivision, which was approved by the Monroe County Plan

Commission and recorded that same year.[1] The subdivision has two adjoining lots – Lot 1 to the west and Lot 2 to the east – that are bordered on the north by State Road 46. The plat states, "There are utility easements, drainage easements and building setback lines as shown on the plat, upon which no structure may be erected or maintained." Appellants' App. Vol. 2 at 127. The plat shows the approximate location of what is labeled as a fifteen-foot-wide utility easement running east-west across the center of Lot 1.[2] The plat also shows a building and gas pumps north of the utility easement and no structures south of the easement; this gas station was owned by Swifty and ceased operating at some point. The plat contains a metes and bounds description of the property's boundaries but does not contain a metes and bounds description of the utility easement. Finally, the plat shows what is labeled as an ingress/egress easement in the northeast corner of Lot 1 adjoining State Road 46 and Lot 2, which does not have direct access to State Road 46.

[4]     In June 1996, Swifty conveyed Lot 2 to Marlin Hukill by warranty deed, which granted Hukill and his successors the right to use the ingress/egress easement on Lot 1 to access Lot 2. In August 1996, Swifty granted Hukill and his successors a second ingress/egress easement on Lot 1, to be used only if the other ingress/egress easement "is cut off from access to State Road 46."

---

[1] All deeds and grants mentioned below were also recorded.

[2] The plat does not indicate that the easement is located a certain distance from the northern and southern boundaries of Lot 1.

Appellants' App. Vol. 3 at 38. The grant contains a metes and bounds description of the second easement.

[5] In 2011, DeSpirito obtained Lot 2 from Bayview Loan Servicing by warranty deed, which contains a metes and bounds description of Lot 2 and of the second ingress/egress easement mentioned above.

[6] In 2014, RCSP obtained Lot 1 from Swifty by warranty deed, subject to "Covenants, Conditions, Restrictions, Utility and Drainage easements and setback lines and any amendments thereto as disclosed on the recorded plat of subdivision." Appellants' App. Vol. 2 at 69.

[7] At some point, the Town of Ellettsville annexed Lot 1. In June 2015, RCSP filed a petition with the Plan Commission to relocate the utility easement on Lot 1 and amend the subdivision plat accordingly. In September 2015, after a hearing, the Plan Commission issued a decision that reads in relevant part as follows:

**Applications—Findings**

….

8. [Lot 1] was recently annexed, and is officially within the jurisdiction of the Town of Ellettsville. The utility easement contains approximately fifteen (15) feet of Smithville [Telephone] cable and a private utility (sewer) line. The utility easement which runs east-west through the center of the property is believed to have been established in order to provide sewer service to Lot 2.

9. The Petitioners are proposing to relocate the easement between 15 and 20 feet to the south. The Petitioners are also proposing to replace the private line with a new line, and have stated they will absorb the cost of the line replacement. The relocation of the easement would allow any new construction to be built deeper in the lot than would currently be permitted. The replacement of the private sewer line would cause only minimal disruption to Lot 2, but would allow for sewer usage indefinitely.

10. The Petitioners are planning to redevelop the site, formerly a Swifty station, and the current utility easement significantly restricts the buildable area of the lot.

### Findings and Conclusion

….

5. The Board accepts as fact the following:

   a. The replacement of the private sewer line would cause only minimal disruption to Lot 2, but would allow for sewer usage indefinitely.

   b. Petitioners have stated that they will absorb the cost of the line replacement.

   c. The purpose of the proposed plat amendment is to increase the buildable area of the lot.

   d. The current location of the easement dissects the lot into two smaller pieces and restricts access to some of the buildable area of the lot.

   e. The proposed relocation for the utility easement represents the best location to allow for future development of the site and maintain the functionality of

the sewer line.

f. There has been no evidence presented which demonstrates that there would be any detrimental effects to the other property in the subdivision.

g. No provision in the Town Code prohibits moving utility easements.

h. The proposed plat amendment satisfies the Town of Ellettsville's subdivision control ordinance.

6. Those [sic] following individuals presented testimony in opposition to the plat amendment or testified as to concerns regarding the proposed new development: Dr. DeSpirito, Rusty Turner, and Susan Chen. Rusty Turner and Susan Chen had concerns about the additional traffic that might be generated and the safety of individuals driving in and out of the property.

….

8. Those individuals who presented testimony in opposition to the proposed plat amendment presented no evidence that the proposed amendment fails to meet the Town's zoning ordinance or that the proposed plat amendment poses detrimental effects to the other property in the subdivision.

9. The Plan Commission finds that the redevelopment of the former Swifty station would be in the best interest of the Town of Ellettsville. The property is currently zoned C-3 and has two access points from State Road 46, and is positioned for a wide variety of commercial development options.

Based on the above findings, the Plan Commission concludes and finds that the Petitioners' application meets all of the requirements as set forth by the Town of Ellettsville Zoning

Ordinance, and the proposed plant [sic] amendment is hereby granted.

The Planning Director's staff report dated August 12, 2015 shall be adopted as part of the Findings of Fact.

*Id*. at 164-67.

[8] DeSpirito filed a petition for judicial review of the Plan Commission's decision and also requested declaratory and injunctive relief. In October 2015, the parties entered into an agreed preliminary injunction, whereby the Plan Commission and RCSP agreed not to take any action on the Plan Commission's decision until further order of the trial court. The parties later filed motions for summary judgment. In October 2016, after a hearing, the trial court issued an order that reads in relevant part as follows:

4. There is no evidence that the 15 foot utility easement that runs east west from Lot 2 across Lot 1 is a public utility easement. The only reasonable conclusion, and the Town so found, is that the 15 foot utility easement that runs east west from Lot 2 across Lot 1 is a private utility easement for the benefit of Lot 2.

5. RCSP wants to build on its Lot 1. The Town found in its Findings and Conclusions that the purpose of moving the easement was to increase the buildable area of Lot 1. Since the easement cannot be built on, due to the 1996 Plat restriction, and for obvious reasons, RCSP wants to move Dr. DeSpirito's 15 foot utility easement to another location on RCSP's Lot 1, at RCSP's expense.

6. The location of easements, if located in a specific place, cannot be changed by either party without the consent of the

other. *Thomas v. McCoy* (1903), 30 Ind. App. 555, 66 N.E. 700; *Ritchey v. Welsh* [(1898)], 149 Ind. 214, 48 N.E. 1031, 40 L. R. A. 105; Jones, Easements § 337, cited in *Shedd v. American Maize Products Co.*, 60 Ind. App. 146, 154-155[, 108 N.E. 610] (Ind. Ct. App. 1915)[, *trans. denied*.]

7. Dr. DeSpirito's easement is located on the plat. It is particular and clear. It cannot be changed by either party without the consent of the other. RCSP seems to acknowledge this principal [sic], as it sought an amendment to the plat, rather than unilaterally relocating the pipe in the easement across its Lot 1.

8. § 153.003 of the Ellettsville Subdivision Regulations provides that "All parties who have a financial interest in the subdivision and subsequent development must be on record as agreeing with the submission provisions in the application to the Plan Commission."

9. It is clear that Dr. DeSpirito has a financial interest in the subdivision and its subsequent development. He owns one of the two lots. The proposed change to the subdivision plat is a change to the rights appurtenant to his lot.

10. RCSP and the Town argue that Dr. DeSpirito's consent is not required, in spite of the language in the ordinance that plainly says that it is. The Staff Report states that the requirement that parties who have a financial interest in the subdivision agree to the submission is "a typical provision in subdivision regulations intended to ensure that all property owners agree how a larger tract will be subdivided." However, the fact that such a provision is typical does not mean it should not be observed. The Staff report argues that Dr. DeSpirito will not be physically affected, as only Lot 1 will have construction on it if moving the utility easement and the pipes is authorized. The Report states that the owner of Lot 2 is not "financially involved with these [proposed] improvements. Therefore, it would be sensible to determine that the petitioners are the only parties with a financial interest in the

plat amendment."

11. The Town in its decision seems to regard the amendment as a minor matter, and the Staff Report and decision justifies waiving the requirement that all parties who have a financial interest in the subdivision agree with the amendment on this basis. However, there seems to be no disagreement that a formal plat amendment was required before RCSP would be legally entitled to move the location of Dr. DeSpirito's easement. The Town's decision states that the purpose of the amendment was to increase the buildable area of Lot 1. Increasing the buildable area of Lot 1 appears to be exactly what Dr. DeSpirito objects to, arguing that the existing plat states that nothing can be built now on the easement he owns, and he has a vested property right to maintain that provision.

….

14. Dr. DeSpirito has a vested property interest in the utility easement, as shown on the original plat.

15. The decision of the Town to act on RCSP's petition to amend the plat is contrary to § 153.003 of the Ellettsville Subdivision Regulations. It is contrary to law.

….

17. Indiana Code 36-7-4-714 provides for the vacation of all or part of a plat including vacation of any recorded covenants, but only after a determination that the factors set out in that section are present. Neither RCSP nor the Town maintains that those factors are present.

….

21. The amendment is on the petition of RCSP. It benefits only RCSP. The United States and Indiana Constitutions prohibit

taking private property for private use. *Pulos v. James*, 261 Ind. 279[, 302 N.E.2d 768] (Ind. 1973). That case also holds that even if some generalized public benefit were found to exist, such as allowing RCSP to make a more intensive use of its Lot 1, compensation would still be due to Dr. DeSpirito for taking and moving his easement. It is illegal to assist one private land owner to "condemn" and take the property of another owner even if compensation is paid, and there is no provision for public compensation of a private taking. The Town's decision states that "Redevelopment of the former Swifty Station would be in the best interest of the Town of Ellettsville." The Staff Report, incorporated into the Plan Commission's findings, was more equivocal. It states that unless there are specific reasons as to why the amendment would not meet the Town's code, it should be approved.

….

23. The court concludes that the evidence is not in dispute. The only reasonable conclusion from the record is that the Town's action takes Dr. DeSpirito's property without his consent. It does so in complete disregard of its own ordinance that requires that all of the owners of subdivision join in a request to amend the plat. The Plan Commission's action does not extinguish the easement across Lot 1, but only moves it. However, the net effect of the Plan Commission's action is to change the location of one owner's property without his consent, at the request of an adjoining owner.

The court determines that Dr. DeSpirito has been prejudiced by a zoning decision that is in excess of statutory authority or limitations, and short of statutory right, as the Town did not observe the requirement of § 153.003.

The court further determines that Dr. DeSpirito has been prejudiced by a zoning decision that is contrary to constitutional right, power, privilege, or immunity, as Plaintiff's easement

rights have been modified without his consent, and without a determination that the provisions of Indiana Code 36-7-4-714 apply and the public interest requires the modification.

IT IS THEREFORE ORDERED that Defendant [RCSP's] motion for summary judgment is denied. Plaintiff Joseph V. DeSpirito's cross-motion for summary judgment is granted. Defendant Town of Ellettsville, Indiana Plan Commissions' [sic] cross-motion for summary judgment is denied.

IT IS FURTHER ORDERED that this case is remanded to the Town of Ellettsville, Indiana Plan Commission, with instructions to dismiss [RCSP's petition], unless said petition is subsequently joined in by Joseph V. DeSpirito.

IT IS FURTHER ORDERED that the Preliminary Injunction … remains in effect.

Appealed Order at 2-6. The Plan Commission and RCSP now appeal.[3]

# Discussion and Decision

[9] When we review an administrative agency's decision, we are bound by the same standard as the trial court. *City of Indianapolis v. Bentley*, 56 N.E.3d 1163, 1166 (Ind. Ct. App. 2016). "Thus, we may not consider any evidence not already in the administrative record, retry the case, or substitute our judgment for the agency's judgment." *Pack v. Ind. Family & Soc. Servs. Admin.*, 935 N.E.2d

---

[3] The notice of appeal states that the appeal is from a final judgment, i.e., a judgment that "disposes of all claims as to all parties." Ind. Appellate Rule 2(H). The finality of the judgment is questionable in light of the preliminary nature of the injunction order, but because our supreme court has significantly relaxed procedural requirements in this regard, *see In re D.J. v. Ind. Dep't of Child Servs.*, 68 N.E.3d 574 (Ind. 2017) (addressing merits of premature appeal), we do not consider the issue further.

1218, 1225 (Ind. Ct. App. 2010) (citing Ind. Code § 4-21.5-5-11), *clarified on reh'g*, 940 N.E.2d 369 (2011). "Similarly, we cannot reweigh the evidence or judge the credibility of witnesses." *Id.*

> Pursuant to the Administrative Orders and Procedures Act (AOPA), we will reverse the administrative decision only if it is (1) arbitrary, capricious, or otherwise not in accordance with law; (2) contrary to a constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence.

*Bentley*, 56 N.E.3d at 1166 (citing Ind. Code § 4-21.5-5-14). "Although an appellate court grants deference to an administrative agency's findings of fact, no such deference is accorded to its conclusions of law. The burden of demonstrating the invalidity of the agency action is on the party who asserts the invalidity." *Id.* (citation omitted). In this case, that party is DeSpirito.

[10] The trial court granted summary judgment in DeSpirito's favor. "Summary judgment is proper where no genuine issue of material fact remains and the movant is entitled to judgment as a matter of law." *Id.* (citing Ind. Trial Rule 56(C)). "Where, as here, the material facts are not in dispute, our review is limited to determining whether the law was correctly applied to the undisputed facts." *Good v. Ind. Teachers Ret. Fund*, 31 N.E.3d 978, 981-82 (Ind. Ct. App. 2015), *trans. denied*.

An easement is "[a]n interest in land owned by another person, consisting in the right to use or control the land, or an area above or below it, for a specific limited purpose …." *Howard v. United States*, 964 N.E.2d 779, 781 n.2 (Ind. 2012) (quoting BLACK'S LAW DICTIONARY 585-86 (9th ed. 2009)). An easement does not give the holder the right to possess the land. *Duke Energy of Ind., LLC v. City of Franklin*, 69 N.E.3d 471, 482-83 (Ind. Ct. App. 2016). "The land benefitting from an easement is called the dominant estate; the land burdened by an easement is called the servient estate." *Howard*, 964 N.E.2d at 781 n.2 (emphases omitted) (quoting BLACK'S LAW DICTIONARY 586 (9th ed. 2009)). The fundamental question here is whether RCSP, the owner of the servient estate, may relocate the utility easement without the consent of DeSpirito, the owner of the dominant estate. The Plan Commission said yes. The trial court said no, citing four primary bases for its decision: (1) Section 153.003 of the Ellettsville Subdivision Regulations; (2) constitutional concerns; (3) statutory concerns; and (4) prior Indiana case law.

## (1) Section 153.003

Section 153.003(A) provides, "All parties who have a financial interest in the subdivision and subsequent development must be on record as agreeing with the submission provisions in the application to the Plan Commission." The trial court concluded that the regulation applies in this situation – a proceeding to amend an existing subdivision plat – and that because DeSpirito has a financial interest in the subdivision and its subsequent development, his consent to the amendment is required. For the reasons given below, we respectfully

disagree with the trial court's conclusion regarding the applicability of Section 153.003.

[13] Construction of a municipal ordinance is a question of law, and we follow the ordinary rules of statutory construction. *City of Columbus Bd. of Zoning App. v. Big Blue*, 605 N.E.2d 188, 191 (Ind. Ct. App. 1992). "We review questions of law under a de novo standard and owe no deference to the trial court's conclusions." *Village Pines at Pines of Greenwood Homeowners' Ass'n v. Pines of Greenwood Homeowners' Ass'n*, 937 N.E.2d 835, 838 (Ind. Ct. App. 2010), *trans. denied* (2011). "We will interpret the ordinance as a whole and give its words their plain, ordinary, and usual meaning." *Daily v. City of Columbus Bd. of Zoning App.*, 904 N.E.2d 343, 345 (Ind. Ct. App. 2009), *clarified on reh'g*, 909 N.E.2d 1038, *trans. denied*. We are required to interpret ordinances so as to prevent absurdity. *T.W. Thom Constr., Inc. v. City of Jeffersonville*, 721 N.E.2d 319, 325 (Ind. Ct. App. 1999). Ordinances relating to the same subject matter are in pari materia (on the same subject) and should be construed together to produce a harmonious regulatory scheme. *See Village Pines*, 937 N.E.2d at 838 (referring to statutes). In determining the intent of the drafters, it is important to see where the ordinance at issue is located within the code of ordinances. *See Roberts v. Sankey*, 813 N.E.2d 1195, 1198 (Ind. Ct. App. 2004) (referring to statutes), *trans. denied* (2005).

[14] The subdivision regulations are grouped under ten headings, starting with "General Provisions," "Application for Subdivision Approval," "Preliminary Plat and Primary Approval," "Final Plat and Secondary Approval," and so on.

The first two regulations under the "General Provisions" heading are Sections 153.001 ("General Requirements") and 153.002 ("Definitions"). The third regulation is Section 153.003, which is also entitled "General Provisions." Section 153.003(B) states, "When it is clearly in the [town's] interest that a parcel should not be developed through further subdivision, the Planning Commission may reject a primary plat." Section 153.003(C) states that subdivisions must comply with local community and comprehensive plans. The subsequent parts of Section 153.003 set out requirements for subdivision streets, block length, lot width, green space, etc. The next regulation, Section 153.010, is entitled "Pre-application for Subdivision Approval" and falls under the heading "Preliminary Plat and Primary Approval." Section 153.010 states that "[p]rior to the filing of a formal application for approval of a preliminary plat, the petitioner shall submit to the Director of Planning Services the plans and data that outline generally the scope and intent of the proposed subdivision project[,]" including the "[p]roposed development name."

[15] Based on the wording of Section 153.003 as a whole and its location within the subdivision regulations, we conclude that it applies solely to the submission of a preliminary subdivision plat, not to the amendment of an existing plat, and therefore is inapplicable in this case. The clear purpose of Section 153.003(A) is to ensure that developers and others with a financial interest in a proposed subdivision and subsequent development are all on the same page before starting the subdivision approval process. Our conclusion is further supported by RCSP's observation that, when applied to a 150-lot subdivision, the trial

court's interpretation of Section 153.003(A) "would require every owner of a lot to consent to the relocation of a utility easement within a single lot." Appellant's Reply Br. at 21 n.4. The drafters of Section 153.003 could not have intended such an absurd result.

## (2) Constitutional Concerns

[16] Several of the trial court's findings touch on constitutional issues, only one of which merits consideration: that "[t]he United States and Indiana Constitutions prohibit taking private property for private use" and that "[i]t is illegal to assist one private land owner to 'condemn' and take the property of another owner even if compensation is paid, and there is no provision for public compensation of a private taking." Appealed Order at 15 (finding 21). Neither the trial court's order nor DeSpirito's appellee's brief cites any pertinent authority for the proposition that a servient tenant's relocation of a private utility easement – at the servient tenant's expense and with minimal disruption to the private sewer line within that easement – constitutes a taking of the dominant tenant's property for private use.[4] The *Pulos* case cited in finding 21 does not support this proposition, as it concerns a statute authorizing the vacation of restrictive covenants, not the relocation of an easement. *See Pulos*,

---

[4] RCSP objects to the trial court's characterization of the utility easement as a private utility easement, especially as to the extent that it might give DeSpirito "any vested private property ownership interest." RCSP's Br. at 20. There is no evidence that any aspect of the easement is public, but regardless of how DeSpirito's interest in the easement is characterized, he has failed to establish that allowing RCSP to relocate the easement without his consent would unconstitutionally violate that interest. To be sure, DeSpirito's interest in the easement is not vested in terms of possession, as an easement is a nonpossessory interest. *Duke Energy*, 69 N.E.3d at 482-83.

26 Ind. at 283-84, 302 N.E.2d at 771 ("A restrictive covenant in a plat is a covenant running with the land. It creates a property right in each grantee and subsequent grantee of a lot in the plat subject to the restriction. That property right cannot be taken for a private use ….") (citations omitted).[5] In sum, the trial court's constitutional concerns regarding the relocation of the easement are misplaced.

## (3) Statutory Concerns

[17] Finding 17 of the trial court's order states, "Indiana Code 36-7-4-714 provides for the vacation of all or part of a plat including vacation of any recorded covenants, but only after a determination that the factors set out in that section are present. Neither RCSP nor the Town maintains that those factors are present." Appealed Order at 14.[6] RCSP asserts that its petition "does not fall within the scope of this statute because the subject of [its petition] is the relocation of a utility easement, not the vacation or stripping of restrictive

---

[5] The trial court's order contains a lengthy quotation from *Wischmeyer v. Finch*, 231 Ind. 282, 107 N.E.2d 661 (1952), which also concerns restrictive covenants and therefore is irrelevant here.

[6] *See* Ind. Code § 36-7-4-714 ("The vacation of all or part of a plat may include the vacation of any recorded covenants filed with the plat, but only upon a determination that: (1) the platted area is within an area needing redevelopment and the covenant vacation would promote a recovery of property values in the area needing redevelopment by allowing or encouraging normal development and occupancy of the platted area; (2) the covenant vacation is needed to secure for the public adequate light, air, convenience of access, or safety from fire, flood, or other danger; or (3) the covenant vacation is needed to lessen or avoid congestion in the public ways.").

covenants in a plat." RCSP's Br. at 36. We agree and therefore conclude that the trial court's statutory concerns are unfounded.[7]

## (4) Prior Indiana Case Law

[18] Finally, as for the trial court's reliance on prior Indiana case law in granting DeSpirito's summary judgment motion, we observe that two of the three century-old cases mentioned in finding 6 involved an easement by necessity – i.e., "[a]n easement created by operation of law because the easement is indispensable to the reasonable use of nearby property, such as an easement connecting a parcel of land to a road" – not a utility easement depicted on a subdivision plat, as in this case. BLACK'S LAW DICTIONARY (10th ed. 2014). In *Ritchey*, the dominant tenant successfully sued to prevent the servient tenant from altering the route of an easement by necessity that had "been selected and used by the agreement of both parties …." 149 Ind. at 221, 48 N.E. at 1033. In affirming the trial court's judgment, our supreme court recited the following rule regarding easements by necessity:

---

[7] In his brief, DeSpirito asserts that RCSP must comply with the requirements of Indiana Code Section 36-7-4-711, which governs cases "in which not all the owners of land in a plat are in agreement regarding a proposed vacation" of a plat or part of a plat. Those requirements include submitting a petition to the plan commission which, after holding a hearing, "may approve the vacation of all or part of a plat only upon a determination that: (1) conditions in the platted area have changed so as to defeat the original purpose of the plat; (2) it is in the public interest to vacate all or part of the plat; and (3) the value of that part of the land in the plat not owned by the petitioner will not be diminished by the vacation." DeSpirito cites no pertinent authority holding that the statute applies to the relocation of an easement on a single lot. In *Jones v. Nichols*, 765 N.E.2d 153 (Ind. Ct. App. 2002), *trans. denied*, we held that a landowner need not jump through similar procedural hoops before granting an easement across his or her own land. We see no reason why RCSP should have to do so in order to relocate an existing easement on its own land.

> When no prior use of the way has been made, and the same is to be located for the first time, the owner of the land over which the same is to pass has the right to choose it, provided he does so in a reasonable manner, having due regard to the rights and interests of the owner of the dominant estate. But, if the owner of the land fail to select such way when requested, the party who has the right thereto may select a suitable route for the same, having due regard to the convenience of the owner of the servient estate. When the way is once selected, it cannot be changed by either party without the consent of the other.

*Id*. at 220-21, 48 N.E. at 1033 (citations omitted). In *Thomas*, this Court quoted that rule in affirming the dismissal of a complaint to establish an easement by necessity for failure to state a claim. *See* 30 Ind. App. at 556-57, 66 N.E. at 701 ("[I]n this complaint there is no allegation that an easement had been marked out, located or existed over and across appellees' land prior to the time this action was commenced.").[8] And in *Shedd*, this Court cited the rule in considering whether the dominant tenant's successful complaint to enjoin the servient tenants from interfering with the extension of sewer discharge and water intake pipelines across an easement and into Lake Michigan was sufficient to state a claim, where it did not describe the dimensions or location of the easement or show that the dominant tenant had asked the servient

---

[8] An American Law Reports article notes that

> courts exhibit a strong tendency to enunciate general propositions of law which, taken literally, deal with [the relocation of easements]. Such pronouncements frequently appear, however, in cases which do not on their facts involve any issue as to the relocation of an existing easement. Even in decisions which are factually in point for the present discussion the language employed is often considerably broader than is necessary for a determination of the issues before the court.

*Relocation of easements (other than those originally arising by necessity); rights as between private parties*, 80 A.L.R. 2d 743 (1961).

tenants to locate the easement and they had refused the request. 60 Ind. App. at 155, 108 N.E. at 614.[9]

[19]  In this case, we are not dealing with an easement by necessity, and neither the dominant tenant nor the servient tenant nor their predecessors selected the location of the easement – its approximate location was drawn on the original subdivision plat submitted by Swifty to the Monroe County Plan Commission back in 1996. Thus, it is doubtful that the rule stated over a hundred years ago in *Ritchey*, to the extent it could be considered a holding, is applicable to the facts before us.

[20]  A more modern and, we think, more equitable approach to easement relocation is found in Restatement (Third) of Property (Servitudes) § 4.8 (2000), which has been adopted or approved by several jurisdictions around the country.[10] Section 4.8, entitled "Location, Relocation, and Dimensions of a Servitude," states,

> Except where the location and dimensions are determined by the instrument or circumstances surrounding creation of a servitude, they are determined as follows:
>
> > (1) The owner of the servient estate has the right within a reasonable time to specify a location that is reasonably suited to carry out the purpose of the servitude.

[9] The *Shedd* court concluded that those issues had been raised in subsequent pleadings and tried by consent of the parties.

[10] *E.g.*, *Roy v. Woodstock Cmty. Trust, Inc.*, 94 A.3d 530 (Vt. 2014), *St. James Vill., Inc. v. Cunningham*, 210 P.3d 190 (Nev. 2009), *M.P.M. Builders, LLC v. Dwyer*, 809 N.E.2d 1058 (Mass. 2004), *Goodwin v. Johnson*, 591 S.E.2d 34 (S.C. Ct. App. 2003), *Roaring Fork Club, L.P. v. St. Jude's Co.*, 36 P.3d 1229 (Colo. 2001).

(2) The dimensions are those reasonably necessary for enjoyment of the servitude.

(3) Unless expressly denied by the terms of an easement, as defined in § 1.2,[11] the owner of the servient estate is entitled to make reasonable changes in the location or dimensions of an easement, at the servient owner's expense, to permit normal use or development of the servient estate, but only if the changes do not

(a) significantly lessen the utility of the easement,

(b) increase the burdens on the owner of the easement in its use and enjoyment, or

(c) frustrate the purpose for which the easement was created.

Comment (f) to Section 4.8 states that the "rule is designed to permit development of the servient estate to the extent it can be accomplished without unduly interfering with the legitimate interests of the easement holder." Moreover, the rule

will increase overall utility because it will increase the value of the servient estate without diminishing the value of the dominant estate and it will encourage the use of easements and lower their price by decreasing the risk the easements will unduly restrict future development of the servient estate. In addition, permitting

---

[11] Section 1.2 of the Restatement defines easement in pertinent part as follows: "An easement creates a nonpossessory right to enter and use land in the possession of another and obligates the possessor not to interfere with the uses authorized by the easement."

the servient owner to change the location under the enumerated circumstances provides a fair trade-off for the vulnerability of the servient estate to increased use of the easement to accommodate changes in technology and development of the dominant estate.

….

…. [T]he safeguards contained in the rule stated in subsection (3) will protect the easement owner's legitimate interests. As stated, the rule permits the servient owner to relocate only if the change does not significantly lessen the utility of the easement, increase the burdens on the easement owner, or frustrate the purpose for which the easement was created. That recognizing a right to relocate a servitude might confer a windfall on the servient owner is not a sufficient reason to reject the rule adopted in subsection (3). The primary purpose of the rule is to increase the value of the servient estate by limiting the easement's potential to prevent development even when a relocated easement would equally well serve the interests of the easement holder. With the safeguards provided, this rule will increase the value of the servient estate without any significant decrease in the value of the dominant estate.

*Id.*[12]

---

[12] Comment (f) further explains,

> This subsection adopts the civil-law rule that is in effect in Louisiana and a few other states. It rejects the rule espoused by the weight of authority in the United States—that the servient owner may not unilaterally relocate an easement. That rule resulted from applying the rule that the easement owner (the owner of the dominant estate) cannot unilaterally change the location of an easement to cases involving attempts by the servient owner to change the location. The reasons traditionally given for denying the easement owner the right to make unilateral changes in location are that treating the location as variable would depreciate the value of the servient estate, discourage its improvement, and incite litigation. Although only one of these reasons— that recognizing the right to relocate would incite litigation—applies to recognizing the servient owner's right to relocate, many courts applied the rule to deny the servient owner the right to relocate. That they did so without appreciating the differences between the two situations can be seen from the cases reciting the same three reasons as the basis for the rule.

Here, only the width of the utility easement is determined by the subdivision plat, which does not expressly deny the owner of Lot 1 the right to make reasonable changes in its location. It is undisputed that RCSP's proposed change to the easement's location will not significantly lessen the utility of the easement, increase the burdens on DeSpirito's use and enjoyment of the easement, or frustrate the purpose for which the easement was created.[13] The only question is whether the proposed change in the easement's location is reasonable. Throughout this proceeding, DeSpirito has argued that relocating the easement would allow for more intensive development of Lot 1 and create traffic and safety issues for his patients, who must use the ingress/egress easement on Lot 1 to access his optometry practice from State Road 46. He has also argued that he purchased Lot 2 with the expectation that the easement would remain in place and prevent further development on Lot 1.

The Supreme Judicial Court of Massachusetts addressed similar concerns in *M.P.M. Builders, LLC v. Dwyer*, 809 N.E.2d 1053 (Mass. 2004):

> Dwyer urges us to reject the Restatement approach. He argues that adoption of § 4.8(3) will devalue easements, create uncertainty in property interests, and lead to an increase in litigation over property rights. Our adoption of § 4.8(3) will neither devalue easements nor place property interests in an uncertain status. An easement is by definition a limited, nonpossessory interest in realty. The owner of the servient estate is in possession of the estate burdened by the easement. An

---

[13] In fact, the Town's engineer testified that the sewer system would be updated and that proper cleanouts, which are currently lacking, would be installed. Appellants' App. Vol. 2 at 169.

easement is created to serve a particular objective, not to grant the easement holder the power to veto other uses of the servient estate that do not interfere with that purpose.

The limitations embodied in § 4.8(3) ensure a relocated easement will continue to serve the purpose for which it was created. So long as the easement continues to serve its intended purpose, reasonably altering the location of the easement does not destroy the value of it. For the same reason, a relocated easement is not any less certain as a property interest. The only uncertainty generated by § 4.8(3) is in the easement's location. A rule that permits the easement holder to prevent any reasonable changes in the location of an easement would render an access easement virtually a possessory interest rather than what it is, merely a right of way.…[14]

….

Although Dwyer may be correct that increased litigation could result as a consequence of adopting § 4.8(3), we do not reject desirable developments in the law solely because such developments may result in disputes spurring litigation. Section 4.8(3) imposes upon the easement holder the burden and risk of bringing suit against an unreasonable relocation, but this far surpasses in utility and fairness the traditional rule that left the servient land owner remediless against an unreasonable easement holder. We trust that, over time, uncertainties will diminish and litigation will subside as easement holders realize that in some circumstances unilateral changes to an easement, paid for by the servient estate owner, will be enforced by courts. Dominant and servient estate owners will have an incentive to negotiate a result rather than having a court impose one on them.

---

[14] Dwyer had been granted a right of way to a public street across M.P.M.'s land. M.P.M. sought to relocate the easement because it interfered with construction for a planned subdivision.

*Id*. at 1058 (footnote, citations, and quotation marks omitted).

[23] We find these observations persuasive and believe that our supreme court would also recognize the utility of adopting the Restatement's approach to easement relocation. With respect to this case, we initially note that DeSpirito's traffic and safety concerns are speculative, given that a hearing has not yet been held on RCSP's plans for redeveloping Lot 1. Before that hearing is held, it would be in both parties' interest to negotiate an agreement regarding traffic flow, parking, and other issues so as to maximize the benefits and minimize the detriments to each business.[15] Failing that, DeSpirito and his employees and patients will have an opportunity to voice objections to RCSP's plans at the hearing. We further observe that DeSpirito took a calculated risk in purchasing a lot with no direct access to State Road 46, as any purchaser of Lot 1 could have sought to increase traffic to the site even without relocating the easement. The Plan Commission essentially concluded that RCSP's proposed relocation of the easement is reasonable, and DeSpirito has failed to

---

[15] In *M.P.M. Builders*, the court stated,

> In some cases, the parties will be unable to reach a meeting of the minds on the location of an easement. In the absence of agreement between the owners of the dominant and servient estates concerning the relocation of an easement, the servient estate owner should seek a declaration from the court that the proposed changes meet the criteria in § 4.8(3). Such an action gives the servient owner an opportunity to demonstrate that relocation comports with the Restatement requirements and the dominant owner an opportunity to demonstrate that the proposed alterations will cause damage. The servient owner may not resort to self-help remedies and, as M.P.M. did here, should obtain a declaratory judgment before making any alterations.

809 N.E.2d at 1059 (citations omitted). In this case, the approval of subdivision plat amendments falls within the purview of the Plan Commission, which has the expertise to determine whether the relocation of an easement is reasonable. In cases not involving a plan commission, a declaratory judgment action should be initiated.

demonstrate that this conclusion was invalid.[16] Therefore, we reverse the trial court's grant of summary judgment for DeSpirito and remand with instructions to enter summary judgment for RCSP and the Plan Commission, reinstate the Plan Commission's decision granting RCSP's proposed plat amendment, and conduct further proceedings not inconsistent with this decision.

Reversed and remanded.

Baker, J., and Barnes, J., concur.

---

[16] In his brief, DeSpirito raises two tangential issues not mentioned in the trial court's order: (1) that the Plan Commission's decision would allow the easement to be relocated in a floodplain on Lot 1, which was allegedly prohibited by a condition imposed by the Monroe County Plan Commission in approving the original subdivision plat ; and (2) that RCSP's proposed development will encroach on the floodplain, which is prohibited by the plat itself. The condition cited by DeSpirito does not prohibit easements (and, more specifically, sewer lines) from being located in the floodplain, and any complaint about the location of RCSP's proposed development is premature because the proposal has not yet been submitted to the Plan Commission.