JOHNSON, appellant, and JAQUI, respondent.

The easement of an artificial water-way, which, by the terms of the instrument creating it, is established on a defined line over the servient tenement, cannot, without the consent of the land-owner, be changed in location to his other lands, either for the convenience of the owner of the servitude, or because of disturbance of the easement by the land-owner, or because the particular land subject to it has been taken by the public for a highway.

Johnson v. Jaqui.

The facts in this case appear in the opinion of the Vice-Chancellor, who heard the cause below, (11 *C. E. Green* 322,) and in the opinion delivered at the last term of this court, deciding an appeal from a decree of the Chancellor made in a cause between the same parties. *Ante, p.* 526. See, also, opinion of Vice-Chancellor Dodd. 10 *C. E. Green*, 410.

*Mr. Pitney*, for appellant.

*Mr. Vanatta*, Attorney-General, for respondent.

The opinion of the court was delivered by
KNAPP, J.

The material questions involved in this cause, as appears by examination of the pleadings and proofs, are identical with those considered and settled at the last term of this court, on an appeal from the decree of the Chancellor in a cause between the same parties, but standing in reverse order.

The parties are at variance concerning the interpretation of certain clauses in a deed, the construction of which settled the rights in controversy in the first suit, and must do so in this.

Johnson first filed his bill to enjoin Jaqui from excavating and placing upon lands of the former, a certain pipe for carrying water from his saw-mill pond to the property of Jaqui, asserting that the pipe was of much greater dimensions than the deed authorized; that the proposed location was on a line different from that which the deed had located the easement of an aqueduct upon, and that the purpose to carry the water to Jaqui's grist-mill, and not to his mill-pond, was the exercise of a right not granted by the deed.

Jaqui admitted his purpose, in locating the new pipe, to vary from the line of the old aqueduct; also to carry it directly to the grist-mill; and claimed authority under the deed to do both. He invoked the authority of the same instrument to permit the use of the larger pipe. The late Vice-Chancellor, on looking into the case, and construing the relevant clause of the deed in question, found the complainant in the case enti-

tled to the relief sued for, and advised against the defendant, Jaqui, on all the points. The court decreed accordingly. The parties, at the last term of this court, were heard upon appeal from that decree, and it was sustained by the unanimous judgment of the court.

In this cause, Jaqui filed his bill of complaint to enjoin Johnson from interfering to prevent his placing the same pipe upon the line successfully objected to in the former suit, and continuing it to his grist-mill pond by still further departure from the locality of the old feeder, asserting that Johnson, by obstructing him in the execution of his purpose, was depriving him of rights secured to him by the deed. The case was heard before the present Vice-Chancellor, and an injunction was ordered.

This court, in supporting the decree in the first case, denied the right of Jaqui to depart, in any substantial degree, from the line of location of the old aqueduct, holding that the easement granted him was established on that line. It also denied his right to make any material increase in size and flowage capacity of the aqueduct for conveying the water from Johnson's pond, and from altering its relation to the surface of the land, resting their conclusions on the construction given to that clause in the deed, upon which Jaqui reposes his claims in this suit.

The Vice-Chancellor, in this case, read the deed differently, and supported Jaqui's right thereunder to make the changes mentioned. The decree now comes here for review upon the appeal of Johnson, and it follows that as the decree in the cause is in direct conflict with the decision of this court on the same question in the other suit, it must be made to conform to that decision. The opinion of the Vice-Chancellor and the decree in this cause were rendered before the first case was heard and determined in this court; hence the conflict.

The circumstance that the pipe as now proposed by the respondent, is to be continued from near the point where it left the lands of appellant, under the plan in the first case,

to the grist-mill pond, and to terminate at the place of terminus of the old trunk or feeder, does not vary the questions in the two cases, except that in this case the right to carry the water to the grist-mill is not asserted. The proposal in this case is to occupy with the new pipe nearly all the ground which the respondent unsuccessfully claimed right to in the former suit, and in addition thereto to make a further deviation from the line of location of the easement as it legally exists, and occupy other lands of appellant in reaching the pond. The difference in that respect in the two cases is, that in this the injury to appellant, identical in character with the other, is greater in its extent. The decision of this court, disallowing the lesser injury, applies with equal force to the greater.

It is equally against the ruling in that case to claim that the dimensions of the desired aqueduct are *substantially* the same as the old. The departure, in respect both to location and dimensions, is substantial and material. Any intentional change is substantial; that variance only is disregarded, which may occur where there is the intent and the exercise of an honest effort to reach identity. The law regards not trifles. The changes in question are neither minute nor accidental; they are admitted to be intentional, and the right to make them is claimed by the respondent, and sought to be enforced by this suit.

It appears in the case, and reference thereto was made on the argument, that appellant has erected, over a portion of the old line, a shed for a cider-press, and in doing so tore up a part of the old feeder; and it also appears that the public road which divides the property of the parties, has been widened by surveyors of the highways, and now includes about one hundred and fifty feet in length of the old aqueduct. I am unable to perceive that these facts vary in any degree the rights of the parties as they exist under the deed.

Their rights in respect to the location of the easement are reciprocal. The appellant may insist upon the enjoyment of it by the owner, substantially, only where the deed places it;

the respondent may assert and enforce his right to such enjoyment, regardless of any consideration of convenience of the owner of the servient tenement.  If the appellant has placed, or allowed to be placed, any structure that interferes with the full enjoyment of the grant, the respondent has the undoubted right, and is armed with ample remedies to abate the injurious disturbance, and enforce compensation therefor; but such obstruction will not justify or excuse deviation from the servitude as granted.  A highway founderous or out of repair, will justify the passenger, under certain circumstances, in going *extra viam* and passing the obstruction on adjoining lands.  It is otherwise with a private way; that can be used only in the manner granted, and the same rule applies here.  A disturbance will not warrant deviation in use.  *Gale & What. on Easements* 229; *Goddard on Easements* 204, 207, and cases cited.

The taking of private property for public use, on which exists an easement inconsistent with such public use, whether taken by the owner's consent or *in invitum*, will not authorize the owner of the dominant tenement to take other lands of him on whose tenement the servitude was located.  The question whether the laying out and opening of a public highway over a part of the line of the old aqueduct will be inconsistent with the further continuance of this private easement there, it is not necessary to consider.  The proper parties are not before us to litigate that question, nor could its solution in any wise affect the rights of the parties in controversy here.  If it be assumed that it destroys the use of so much of the aqueduct as lies within the limits of the highway, the act of laying the road was the taking or destruction of private property for public use; the respondent would not thereby be gifted with authority to take the use of other lands of appellant in its stead, not granted by him.  For such taking of his property the respondent is entitled to have compensation of the public, if he has not had it or waived his right to have it.  Whether he receives compensation for his loss from the public, or for any cause fails to receive it, it is manifest that he cannot, for

his property taken by the state, make reprisal upon the appellant.

It is insisted that the answer admits the respondent's right to all the water in the pond, and that is reason for the court placing that interpretation on the grant. The admission or opinion of the respondent as to the meaning of the deed, can form no guide to the court in giving construction to it, if construction be necessary. Besides, the admission referred to in the fourteenth clause of the answer, is of the right to have "all the water of the pond, to be conveyed by substantially the same conduits, located in the same place as that which existed at the date of the said deed."

Johnson, in the notice sent in reply to that of Jaqui, offers him a pipe ten inches in diameter. This is larger than the old one, but the offer was not accepted. Had it been accepted by Jaqui, a new agreement might have grown up between the parties; as it was not accepted, the offer has no force, either as a new bargain or in interpreting the old one.

The decree in this cause must be reversed, on the grounds taken by this court in affirming the decree of the Chancellor in Johnson *v.* Jaqui.

The bill should be dismissed, with costs.

Decree unanimously reversed.