JOHN E. HAMMETT, PLAINTIFF-RESPONDENT, v. JAMES ROSENSOHN AND FLORENTINE R. ROSENSOHN, DEFENDANTS-APPELLANTS.

Argued March 4, 1958—Decided April 3, 1958.

416

*Mr. Sam Weiss* argued the cause for the defendants-appellants.

*Mr. Francis E. Bright* argued the cause for the plaintiff-respondent (*Messrs. Dolan & Dolan,* attorneys).

The opinion of the court was delivered by

BURLING, J.   This case involves a dispute between adjoining property owners over the meaning and effect of certain reserved easements and restrictions in a deed.   The judicial task is one of the construction of a written instrument.

In 1928 the plaintiff, John E. Hammett, purchased two adjoining parcels of land located in Sussex County.   The area was and is scenic, rural and secluded.   Since 1928 the plaintiff has maintained one of the parcels as a one-family country estate.   Shortly after his original acquisition the plaintiff conveyed the other parcel, an estate known as "Casa Stradella," presently owned by the defendants, to a friend, one Luebbers.   Located largely within the confines of these two parcels is a small (approximately 35–40 acres) lake or pond called Roseville Pond.   Roughly, one-third of the pond is included within the 35.368-acre Luebbers Tract, while slightly more than one-half of the pond's area is located within the bounds of the plaintiff's 71.104-acre tract.   The remainder of the lake area is located within two separate parcels which are also currently owned by the defendants.

The plaintiff and Luebbers maintained the manorial character of their respective holdings, enjoying the quietude, the seclusion and the natural beauty of their surroundings. In 1934 Luebbers died, and plaintiff, in order to protect his property from the intrusion of a neighbor with dissimilar tastes, reacquired the Luebbers Tract.

In 1935 one Hopson became interested in the Casa Stradella estate. Hopson purchased the estate from plaintiff, taking title through his corporate nominee, General Public Utilities Corporation. This 1935 deed contains the various easements and restrictions which form the basis for the instant controversy. (These will be referred to hereafter.) Hopson also acquired several other parcels of nearby realty, taking title through different nominees. In 1936 he purchased the Sickels Tract, a large parcel of land lying adjacent to the Luebbers Tract along the eastern boundary, the confines of which include the extreme easterly portion of Roseville Pond. In 1937 he purchased the Rusby Tract, which includes three small separated segments. Small portions of the pond are included in two of the segments of the Rusby Tract. By *mesne* conveyances the defendants, James Rosensohn and Florentine R. Rosensohn, his wife, in 1947 acquired the Hopson's interest in the Luebbers, Sickels and Rusby Tracts (less a 22-acre portion not here pertinent).

The 1935 deed from plaintiff to the General Public Utilities Corporation contained the following provisions designed to effectuate the plaintiff's and Hopson's mutual desire to preserve the country estate character of their holdings and to afford to each party the beneficial use of the pond:

"The parties of the first part also grant and convey to the party of the second part, its successors and assigns, the right to use, in conjunction with the parties of the first part, their heirs and assigns, the waters in Wright's or Roseville Pond now owned by the party of the first part for boating, fishing, skating, ice-cutting, hunting and bathing purposes.

   *        *        *        *        *        *        *        *

    1. The said respective premises shall each be used solely for a one family country home or estate.

2. No building or structure shall be erected on said premises inconsistent with the use thereof as one family country homes or estates.

3. No hedge or trees shall be planted and no fence shall be constructed by either of the parties hereto on the 14 to 17 courses, inclusive, of the First Tract hereby conveyed.

4. No building or other obstruction shall be erected to the westward of the present ice-house so as to obstruct the view, from the residence of the parties of the first part, of the Wright's or Roseville Pond, except however, the party of the second part shall have the right to construct a structure to be used solely as a boat house of not more than one and one half stories in height, upon the south side of said Wright's or Roseville Pond to the westward of the present ice-house and within the boundaries of said First Tract hereby conveyed.

5. The parties of the first part shall have the right to erect on the premises now owned by John Hammett, one of the parties of the first part, and located on the northerly side of Wright's or Roseville Pond a one family cottage to be used by said parties of the first part in connection with the home upon the premises now owned by said John Hammett and occupied by the parties of the first part, adjacent to the First Tract hereby conveyed.

The parties of the first part reserve the right, during the lifetime of John Hammett, one of the parties of the first part, to occupy the westerly one half of the ice-house located upon the First Tract hereby conveyed and agree to pay during said occupancy thereof one half of the cost of the maintenance of said ice-house.

The parties of the first part reserve the right to use that portion of the present road adjacent to the ice-house and which lies between the 15th and 17th courses, inclusive of the First Tract hereby conveyed and the border of said Wright's or Roseville Pond.

This conveyance is made subject * * * to the right of the parties of the first part, their heirs and assigns, to use the waters of Wright's or Roseville Pond for boating, fishing, skating, ice-cutting, hunting and bathing purposes, where said waters of Wright's or Roseville Pond, or contained within the boundaries of the First Tract hereby conveyed.

Any and all rights to the use of the waters of Wright's or Roseville Pond now owned or hereafter acquired by the parties hereto, shall not extend to the use of said waters in conjunction with any business enterprise or development or public use whatsoever, and said use of said waters shall be limited to the occupants of the premises of the parties hereto abutting upon said Wright's or Roseville Pond, and their families and private guests."

The defendants' immediate deed makes reference to the restrictions contained in the 1935 deed of the Luebbers Tract and the defendant, James Rosensohn, admits his knowledge at the time of the purchase of the restrictions.

The defendant, James Rosensohn, is a real estate broker and investor. At the trial he testified that he intended to utilize portions of his property for development purposes. His plans were to subdivide the Sickels and Rusby Tracts, and to build a public beach on the easterly shore of the pond within the Sickels Tract for the purchasers of lots.

As for the Luebbers Tract, it was Rosensohn's intention to subdivide that parcel and to erect two dwelling houses thereon for members of his family. He did not plan, however, to sell lots in the Luebbers Tract to "outsiders."

Rosensohn also planned improvements along the southerly shore of the pond located within the Luebbers Tract, in the area between the 14th and 17th courses referred to in the 1935 deed of the tract from plaintiff to Hopson. He testified that these improvements were to be for private purposes, i. e., to facilitate his enjoyment of the pond. While three separate proposals for improvements were introduced in evidence, defendants rely upon one bearing date June 1955. This plan contemplates: (1) changing the grade of a roadway which runs adjacent to the shore of the pond and over which plaintiff has a right of way for the purpose of eliminating a precipitous drop; (2) extending the present shore line an average of 22 feet into Roseville Pond along a length of 135 feet; (3) building a luxurious boat house structure to be located at the westerly end of the area to be filled in.

In furtherance of his contemplated scheme for improvements, Rosensohn commenced chopping down trees along the shore area and demolished an existent small boat house which he owned.

Plaintiff, having acquired knowledge of Rosensohn's plans, commenced an action in the Superior Court, Chancery Division. He sought an injunction:

"Restraining the defendants, their agents, servants or employees from changing the existing shore line of Roseville Pond or relocating the road along that shoreline and further restraining them from the creation of any beach for the use of the public at Roseville Pond,

permitting the public to use the waters of Roseville Pond or building a boathouse anywhere except along the existing shoreline of Roseville Pond."

Defendants answered denying the efficacy of the restriction to any portion of the land owned by them and counterclaimed for a judgment declaratory of their rights in the property.

En route to this court the issues in the cause have been considerably narrowed. The trial court made the following rulings with respect to the contentions raised before it:

(1) That the restrictions and easements contained in the 1935 deed are definite, certain, reasonable and not contrary to public policy—in short, enforcible.

(2) That the easements and restrictions have not been abandoned or waived by the plaintiff and that he is not estopped from asserting them.

(3) That the easements and restrictions are not enforcible in respect to the Sickels Tract.

(4) That so long as the restrictions remain in effect the defendants may be enjoined from subdividing the Luebbers Tract.

(5) That the defendants have no right to open Roseville Pond to the public or utilize it in connection with any commercial activity.

(6) That defendants have the right to grant rights of way over their property.

(7) That defendants have no right to demolish an existing ice-house, nor have they any right to erect any structure west of the ice-house except one to be used solely as a boathouse.

(8) That plaintiff's easement to use the roadway adjacent to the ice-house is permanent and independent of the use of the ice-house.

(9) That the restrictions in the 1935 deed shall remain enforcible so long as the plaintiff or any member of his family owns the premises, they now occupy, unless sooner released, abandoned or waived.

(10) That the defendants have the right to change the grade of the existing roadway between the 15th and 17th courses in accordance with the submitted plans of June 1955.

The court entered judgment in accordance with the oral rulings. The defendants appealed and the plaintiff, cross-appealed to the Appellate Division. The defendants' appeal was limited to those portions of the judgment below enjoining them from (1) filling in any portion of the Roseville Pond located within the Luebbers Tract and extending the shoreline; (2) erecting the proposed boathouse; (3) subdividing the Luebbers Tract. The plaintiff's cross-appeal attacked those portions of the trial court's judgment negating the application of the restrictions contained in the 1935 deed to Hopson's after acquired property, *i. e.*, the Sickels and Rusby Tracts. He further attacked the trial court's refusal to restrain defendants from altering the location and grading of the existing roadway and the denial of injunctive relief prohibiting defendants from permitting third persons to utilize that portion of the roadway over which plaintiff has a right of way. The Appellate Division, by written opinion, affirmed the judgment below in all respects. 46 *N. J. Super.* 527 (1957). Defendants petitioned for and were granted certification. 25 *N. J.* 329 (1957). The plaintiff has not pursued a cross-appeal from the judgment of the Appellate Division.

In this posture the narrow issues raised are whether, under the terms of the 1935 deed, the trial court erred in adjudicating (1) that the defendants have no right to fill in any portion of the waters of Roseville Pond included within the Luebbers Tract, and specifically whether error was committed in enjoining the defendants from filling in and extending the existent shoreline of the pond westward of the present ice-house in conformity with the proposed plan of June 1955; (2) that the defendants were prohibited from erecting the boathouse structure pursuant to the June 1955 plan; (3) that defendants have no right to subdivide the Luebbers Tract.

We consider first the problem raised by the defendants' proposed fill of the pond within the area of the Luebbers Tract. The judgment below provides:

"8. The defendants are enjoined and restrained from extending the present shoreline of Roseville Pond or filling in the portion of the waters of Roseville Pond to the westward of the present ice-house within the limits of the Luebbers Tract pursuant to the plan dated June 1955 prepared by M. Hampton Byram."

"9. Defendants have no right to fill in any portion of the waters of Roseville Pond within the Luebbers Tract."

The problem of declaring the correlative rights and duties of the owners of the servient and dominant estates arising from an easement is one of construction. The primary rule of construction is that the intent of the conveyor is normally determined by the language of the conveyance read as an entirety and in the light of the surrounding circumstances. *Restatement, Property,* § 242 (1940); 2 *American Law of Property,* § 8.65, *p.* 276 (1952). See also *Oldfield v. Stoeco Homes, Inc.,* 26 *N. J.* 246 (1958); 6 *Thompson, Real Property,* § 3486, *pp.* 720-722 (1940).

The 1935 deed provides that the plaintiff shall have the right:

"* * * to use the waters of Wright's or Roseville Pond for boating, fishing, skating, ice-cutting, hunting and bathing purposes, where said waters of Wright's or Roseville Pond, or (sic) [are] contained within the boundaries of the First Tract hereby conveyed."

We start with the determination that the above language is unambiguous and that the terms of the instrument govern. It means that the plaintiff may have the beneficial use of the waters of the entire pond within the Luebbers Tract. The defendants must fail unless either the other provisions in the deed so complement or modify the language of the easement as to create a reasonable inference that a more liberal approach was intended or that the circumstances surrounding the creation of the instrument lead to such a conclusion.

A study of the restrictive provisions contained in the 1935 deed from the plaintiff to General Public Utilities Corporation indicates that they are fitted to serve an obvious goal, *i. e.,* the preservation of the tracts as one-family country estates and the availability of the entire pond for the pleasure purposes of both families and their private guests. Aesthetic considerations weigh heavily in the balance. An essential ingredient of the scheme was the preservation, consonant with the basic purpose of the *status quo* of the natural surroundings. Plaintiff's home overlooks the shore at the point at which the contemplated improvements are to be located. To preserve this view he provided in the deed that no hedge or trees shall be planted and no fence shall be constructed at that point in the shore and that no building or other obstruction shall be erected westward of the present ice-house so as to obstruct his view save a structure of not more than 1½ stories in height to be used solely as a boathouse.

The plaintiff has over the years actively and diligently pursued a course designed to effectuate his desire to live in quietude and seclusion and to enjoy the natural beauty of his chosen habitat. Modern urban and suburban property owners are protected in their modes of living by zoning laws, whereas in the country the more practical and convenient devices for securing the self-same lawful ends are restrictive covenants. The law will protect and give effect to provisions designed to achieve these ends.

It is our conclusion that the provisions in the deed as a whole ring in restrictive tones. They do not have that fluidity and flexibility essential to the allowance of a transgression because of convenience or even reasonable necessity, but rather that fixity ordinarily requiring a punctilio of performance.

Nor do the circumstances surrounding the formulation of the conveyance necessitate a *contra* result. Many of the background factors have previously been alluded to and they point to the conclusion that a strict adherence to the language was intended. To these might be added the

fact that in the absence of evidence establishing the contrary, it must be assumed that the parties were familiar with the property and that they had knowledge of the depth of the pond within the area of the Luebbers Tract.

▮ The defendants contend that the result should be tempered by doctrines of convenience or reasonable necessity. See *e. g., Johnson v. Jaqui*, 27 *N. J. Eq.* 552 (*E. & A.* 1876); *Johnston v. Hyde*, 33 *N. J. Eq.* 632 (*E. & A.* 1881); *Walden v. Pines Lake Land Co.*, 126 *N. J. Eq.* 249 (*E. & A.* 1939), and cases cited 2 *American Law of Property*, § 8.66, *p.* 279, at *n.* 6 (1952); *Lidgerwood Estates, Inc., v. Public Service, etc., Co.*, 113 *N. J. Eq.* 403 (*Ch.* 1933); *Hyland v. Fonda*, 44 *N. J. Super.* 180 (*App. Div.* 1957). But such mollifying canons of construction can only be resorted to when the intention of the parties cannot be ascertained by resort to the primary sources, and not where, as here, the intention is clearly spelled out. But even if we were to refocus our attention to the residue interest of the defendants in the servient estate and to hold that they might utilize the servient estate to the extent reasonably necessary to the enjoyment of their beneficial interest therein, and although it clearly constitutes an interference with the plaintiff's rights, we would still not be persuaded that the contemplated fill is reasonably necessary.

Defendants contend that the exercise of their right to bathe in the pond requires the opportunity to do so in shallow water and that the construction of a beach area should be permitted on the grounds of reasonable necessity.

▮ But the touchstone is necessity and not convenience. The record indicates that the Luebbers Tract has been used as a one-family estate for nearly 30 years, at least, and no one has found it necessary to construct a beach area in order to enjoy, as originally contemplated, the bathing benefits of the pond. The defendants themselves had resided at Casa Stradella for some seven or eight years prior to their proposal to construct a beach.

▮ The defendants further contend that the fill is necessary in order to provide an access to the shore lines of the

pond at the point west of the ice-house because the existent slope from the roadway to the shore is "precipitous." But the evidence in the case clearly indicates that gradual and adequate access to the present water line can be had by changing the grade of the roadway and adjacent land, a right which defendants have under the present posture of the case. Thus they have not met the burden of showing necessity for a fill with respect to access to the pond. With respect to the necessity of fill for constructing a boathouse, it is noteworthy that the defendants demolished an existent boathouse to which there must necessarily have been prior access thereto.

■■ From an examination of the primary sources from which intent is to be ascertained, *i. e.,* the deed as an entirety read in light of the circumstances surrounding its creation, we conclude that those portions of the judgment below dealing with the defendants' right to fill in a portion of the pond within the Luebbers Tract should be affirmed.

Defendants contend that their proposed boathouse was within the intendment and spirit of the 1935 deed from plaintiff to General Public Utilities Corporation and that the Chancery Division was in error in restraining its construction. We repeat the pertinent provision of the deed:

"4. No building or other obstruction shall be erected to the westward of the present ice-house so as to obstruct the view, from the residence of the parties of the first part, of the Wright's or Roseville Pond, except however, the party of the second part shall have the right to construct a structure to be used *solely* as a boat house of not more than one and one half stories in height, upon the south side of said Wright's or Roseville Pond to the westward of the present ice-house and within the boundaries of said First Tract hereby conveyed." (Emphasis supplied.)

The overall dimensions of the contemplated structure are 41′ x 24′ with a dock 12′ x 16′. Most of the structure would be over the water. The architectural plans provide for a snack bar, lavatory, three dressing rooms, a room for storing tackle, an open patio or recreation porch, a sundeck on the roof surrounded by an ornamental railing as well

as an open roofed over area reserved for boats. The area reserved for the storage of boats is about 16% of the first floor area and approximately 8% of the area of the floor and roof deck.

The word "solely," when used in conjunction with "boat house," gives the term a meaning which is hardly equivocal. The intendment, especially when read in light of the other provisions, is clear. The utility of the permissible structure was limited to the storage of boats. This does not mean that other facilities which are reasonably incident to boating cannot be constructed. But the edifice designed by the defendants and presented for approval is certainly not functionally limited to boating. The facilities are designed to provide space for social entertaining and sunbathing. It is our conclusion that the judgment below restraining defendants from erecting the proposed boathouse in the area westward of the present ice-house within the Luebbers Tract is correct.

Lastly, defendants contend that the trial court erred in adjudicating that they have no right to subdivide the Luebbers Tract so long as the restrictions in the deed remain in effect.

The defendants admit that they have no right to construct additional homes on the tract because it is restricted to a one-family estate. But they contend that this does not limit their right to convey portions of the tract to members of their family. The plaintiff argues that subdivision can serve no useful purpose other than increasing the possibility of future lawsuits. We are satisfied that the restriction against the use of the tract other than for a one-family country estate implies that there can be no subdivision of the tract.

The judgment below is affirmed.

WEINTRAUB, C. J. (dissenting in part). I join in the majority opinion with respect to the issues relating to the boathouse and the proposed subdivision, but disagree with the conclusion reached on the question whether a

portion of the pond may be filled to permit safe and comfortable bathing.

The pond covers some 40 acres. A substantial portion was included in the conveyance from plaintiff to defendants' predecessor in title. To insure enjoyment of the whole pond the deed contained the reciprocal covenants quoted in the majority opinion.

The majority hold that the proposed improvement may not be made, even in the presence of reasonable necessity. That conclusion. presupposes that the covenant as drawn bars the improvement, and it is that hypothesis with which I disagree.

The parties wanted a common opportunity to boat, fish, skate, cut ice, hunt and bathe, in terms of a whole pond, rather than in terms of every cubic inch of it. Upon plaintiff's thesis, it would follow, for example, that he contracted away his right to replace his own boathouse with a larger one, or to build a pier for bathing or boating, for such action would deny defendants access to every bit of the pond in violation of plaintiff's parallel covenant. A restraint of that kind seems to me to be so unreasonable that we should not find it unless the language used unmistakably shows it was intended.

There is no express restriction upon the right of either party to use his portion of the pond for bathing. On the contrary, the parties sought to give each other additional rights in the other's holdings. The covenants should be construed to assure the additional rights without trenching upon the primary right of each in his own property so long as that adjustment is consonant with their primary purpose. It should be "assumed that the possessor of the servient tenement has all the privileges of use of that tenement which are not inconsistent with a reasonable exercise by the owner of the easement of his particular privileges." 2 *American Law of Property* (1952), § 8.66, *p.* 279; *cf. Hyland v. Fonda,* 44 *N. J. Super.* 180 (*App. Div.* 1957).

There is not a word which affirmatively restrains either party's use or improvement of his property for bathing. The

surface area of the whole pond is estimated at 1,800,000 square feet. The proposed fill would reduce it by about 2,970 square feet, or 1/6th of 1% of the whole. I cannot find any inconsistency with a reasonable exercise by plaintiff of his privileges. The impact upon his opportunity to boat, fish, skate, cut ice, hunt and bathe would be picayune.

The majority stress the aesthetics. I find no relation between aesthetics and the covenant here involved. If to that end plaintiff wanted to restrict his grantee's right to bathe and to improve his property, he should have bargained for it directly. We should not accomplish it for him indirectly by a strained extension of the reservation he fashioned.

I would modify the judgment accordingly.

I am authorized to say that Mr. Justice JACOBS and Mr. Justice FRANCIS join in this opinion.

*For affirmance*—Justices HEHER, WACHENFELD, BURLING and PROCTOR—4.

*For modification*—Chief Justice WEINTRAUB, and Justices JACOBS and FRANCIS—3.