**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3867-19
           A-0175-20

RRR NEWGEN, LLC,

      Plaintiff-Respondent,

v.

RESOL53 LLC and PETER J.
RICCIO, an Individual,

      Defendants-Appellants.

_____

RESOL53, LLC,

      Plaintiff-Appellant,

v.

POCHI CORPORATION t/a
RAY'S PHARMACY,
RRR NEW GEN: LLC, and
ASHISH PATEL,

      Defendants-Respondents.

_____

Argued (A-3867-19) and Submitted (A-0175-20)
July 27, 2021 – Decided September 13, 2021

Before Judges Rothstadt and Enright.

On appeal from the Superior Court of New Jersey, Chancery Division, Middlesex County, Docket Nos. C-000053-19 and C-000055-19.

Michael Confusione argued the cause for appellants (Hegge & Confusione, LLC, attorneys; Michael Confusione, of counsel and on the briefs).

Eric B. Levine argued the cause for respondents (Lindabury, McCormick, Estabrook, & Cooper, attorneys; Eric B. Levine, of counsel and on the briefs).

PER CURIAM

These two appeals, which we have consolidated for the purposes of writing one opinion, arose from an ongoing dispute about a parking easement on property situated between two commercial properties in Dunellen granted by deed in 1987, and its written, unrecorded modification agreement dated July 9, 2012 (2012 agreement). In A-3867-19, (the easement action) defendant RESOL53, LLC (RESOL53), the owner of the benefitted property (Lot 1), and its member, Peter Riccio (collectively defendants), appeal from the Chancery Division's June 10, 2020 order granting summary judgment to the owner of the burdened property, (Lot 2), RRR Newgen, LLC (RRR Newgen), of which Ashish Patel is a member (collectively plaintiffs). The June 10 order also

declared that the 2012 agreement between Peter[1] and Lot 2's previous owner was unenforceable against plaintiffs because plaintiffs did not have notice of the 2012 agreement prior to purchasing Lot 2 in 2018.

In A-0175-20, (the enforcement action) defendants appeal from the Chancery Division's September 16, 2020 order denying their motion to enforce litigant's rights and further ordering that Peter and his son, Carl Riccio, are barred from interfering with the use and management of the parking lot and from having any contact with any of plaintiffs' tenants or customers, except as bona fide customers of plaintiffs' tenants.

We reverse the grant of summary judgment to plaintiffs in the easement action and vacate the orders regarding enforcement of the easement because we conclude the motion record established there was a genuine dispute as to a material fact about whether plaintiffs had notice of the 2012 agreement.

I.

The only issue before the motion judge on summary judgment in the easement action was whether the owner of Lot 2 had sufficient notice of the modification agreement. With that issue in mind, we summarize the facts,

---

[1] We refer to various individuals involved in these matters by their first names to avoid any confusion created by their common last names with other individuals to which we refer.

relating to the creation of the easement and its modification in the 2012 agreement, and that agreement's impact on defendants' use of plaintiffs' property. We do so in the light most favorable to defendants as the parties opposing summary judgment.[2] Ben Elazar v. Macrietta Cleaners, Inc., 230 N.J. 123, 135 (2017).

The 1987 Easement

Prior to 1987, A&J Enterprises, a general partnership, in which Peter was a partner, owned Lot 1 and Lot 2[3] as well as the parking lot on Lot 2 that was situated between the two properties' buildings. He also owned and operated Towne Pharmacy, which occupied the only building on Lot 1, along with a sandwich restaurant.

---

[2] We recognize that where, as here, a motion judge is confronted with essentially cross-motions for summary judgment, a party's argument on appeal, like defendants assert here, that material issues of fact existed is typically undermined by the filing of the cross-motion. See Spring Creek Holding Co. v. Shinnihon U.S.A. Co., 399 N.J. Super. 158, 177 (App. Div. 2008); Morton Int'l, Inc. v. Gen. Accident Ins. Co. of Am., 266 N.J. Super. 300, 323 (App. Div. 1991), aff'd, 134 N.J. 1 (1993). Here, however, as discussed infra, the facts presented on summary judgment were disputed.

[3] Lot 1 is located at 2-16 Washington Avenue, and is designated as Lot 1, Block 86 on the Tax Map of the Borough of Dunellen. Lot 2 is located at 233-257 North Avenue, and is designated as Lot 2, Block 86 on the same Tax Map.

In November 1987, A&J Enterprises sold Lot 2 and the parking lot to New Dunellen Associates. In the deed transferring title, A&J Enterprises reserved for its own benefit a nonexclusive easement permitting its use of Lot 2's parking lot subject to restrictions. The deed described the easement area by metes and bounds and relevant to the issues on appeal, it stated the following:

> In consideration of the terms and conditions of the Contract of Sale between the parties herein, the Grantee hereby grants and conveys to the Grantor a nonexclusive easement for customer parking and right of way in the existing parking lot on Lot 2 . . .
>
> . . . .
>
> Said nonexclusive easement and right of way is limited to short term maximum two-hour parking for customers and shoppers also patronizing the business conducted in the building located on [Lot 1] . . . provided that such use of said [Lot 1] is a pharmacy business.
>
> TOGETHER with the right of ingress thereto and egress therefrom, along, on and within the said nonexclusive easement and right of way, for any and all purpose connected with said patronizing of the pharmacy business being conducted on said [Lot 1].
>
> Said nonexclusive easement and right of way shall inure to the benefit of the owner of the building located at said Lot 1, Block 86, its heirs, assigns or successors in title, interest or possession for as long as a pharmacy business is conducted on said Lot 1, Block 86. This nonexclusive easement and right of way shall also inure to the benefit of any operator of the pharmacy business located on said Lot 1, Block 86. Said parking lot shall

be utilized by customers and shoppers from businesses conducted on said Lot 1, Block 86, provided said use is a pharmacy business, as well as said Lot 2, Block 86. Subject to conditions and limitations set forth herein, this nonexclusive easement and right of way shall run with the land and bind the Grantee, its successors and assigns, in title, possession and its heirs. It is expressly understood and agreed that the parking facility shall not be used or cause to be used for a parking lot for employees or long-term commuter parking.

IN ADDITION, that the Grantor shall not be charged any cost or expense beyond the consideration set forth herein for the nonexclusive easement and right of way, and the nonexclusive easement holder shall not be responsible to maintain or pay to maintain the nonexclusive easement and right of way in good condition and/or free of snow and debris.

The deed also restricted the Lot 2 owner from allowing certain businesses from being operated on its property, including a pharmacy.

<u>The 2004 Sale of Lot 2 and the 2012 Agreement</u>

After the conveyance, A&J Enterprises maintained ownership of Lot 1[4] and Peter operated Towne Pharmacy from its only building. In June 2004, New Dunellen Associates sold Lot 2 to UMI Enterprises. Girish Patel[5] was a member

---

[4] At some point in time, A&J Enterprises transferred title of Lot 1 to Peter, who sometime thereafter created RESOL53. Carl is that entity's managing member. Peter was also a member.

[5] Girish is not related to Ashish.

of UMI Enterprises at the time.  The 2004 deed to UMI incorporated the same language about the easement as was stated in the 1987 deed.

At some point after UMI bought Lot 2, Peter sought to expand the building on Lot 1, which would impact the parking lot.  He approached Girish with changes he wanted to make to the building that required alterations to the parking lot and modifications to the 1987 easement.  During the ensuing conversations, Peter was represented in conversations with Girish by Carl, who was a practicing lawyer at the time and acted as a "go between" for Peter.  According to Carl's deposition testimony, Peter negotiated for himself.  Peter and UMI, through Girish, entered into the 2012 agreement on July 9, 2012, just before the Dunellen Board met and granted approval for the renovations.  The board's approval was memorialized in an August 27, 2012 resolution.

The terms of the 2012 agreement were only set forth in the July 9, 2012 letter drafted by UMI's attorney.  The letter explained that the 1987 easement would be "modified to permit [Peter's] customers and employees to use the parking lot [and t]he easement will run with the land."  The letter also explained that the parties agreed that Peter would pay for a share of the costs of cleaning the parking lot, snow removal, and electricity.  Additionally, Peter could build a sidewalk, the two rows of parking next to UMI's building and the two rows of

A-3867-19

parking next to Peter's building could be reserved for two-hour parking, and they could install appropriate parking signage as well. The last term read: "the foregoing shall be incorporated in a form of Easement Agreement to be recorded in the Middlesex County Clerk's Office."

In the conclusion of the letter, UMI's attorney wrote: "If acceptable, I ask that the parties sign and return this letter to me. I will then prepare a draft of the Easement Agreement." The letter was addressed to and countersigned by Peter and made no mention of A&J Enterprises or RESOL53. Girish signed the letter on behalf of UMI. The parties do not dispute that there was no evidence that an easement agreement was ever prepared or recorded. It was also undisputed that the physical alterations to the parking lot required to be undertaken by Peter, including the installation of sidewalks, were at least commenced, if not completed by 2018.

Sale of Towne Pharmacy in 2014

In 2014, Peter sold Towne Pharmacy to Mahendra Patel, who was the sole member of Pochi Corporation. After that sale, Peter maintained ownership of Lot 1 and the pharmacy became a tenant.

At his deposition, Mahendra, who speaks limited English, testified he was assisted in the sale by his daughter, son, and his son-in-law, Ashish. After the

sale, Mahendra changed the name of the pharmacy to Ray's Pharmacy. Mahendra was assisted in operating Ray's Pharmacy by his children and Ashish because Mahendra was primarily situated in London at that time. Mahendra was unaware of any agreements affecting the pharmacy's or Lot 2's use of the parking lot.

According to Carl's deposition testimony, he first met Ashish when Mahendra was looking to buy the pharmacy from Peter in December 2013. Carl remembered showing Ashish around the pharmacy and the property, including the parking lot. He testified that he told Ashish they had a parking agreement through a deed, as well as a parking lot agreement with their "neighbors" for the customers to park. Carl also said that he told Ashish they reserved the third row for employee parking. He did not remember if Mahendra, Ashish, or Mahendra's children saw a copy of the deed, and he did not remember giving them a copy of the 2012 agreement. He did remember telling them about the existence of the agreement as well as the site plan approval process.

Ashish testified that he did not recall when he first spoke to Carl, and only remembered speaking to him once or twice. As to Ashish's involvement with the pharmacy, he helped when Mahendra asked, but he was not involved in Mahendra's purchase, beyond discussing things Mahendra's attorney told him.

A-3867-19

He estimated that he went to the pharmacy about five or six times per year between 2014 and 2018.

<u>Sale of Lot 2 in 2018 & Subsequent Parking Disputes</u>

In 2018, Girish agreed to sell Lot 2 to Ashish. Ashish bought Lot 2 on June 7, 2018, and a deed was recorded on June 13, 2018, placing title in the name of RRR Newgen. It was undisputed that the title search relating to the purchase only revealed the 1987 recorded easement and did not reflect the existence of the 2012 agreement. It is also undisputed that after the conveyance, Ray's Pharmacy relocated to a premises on North Avenue, two lots over from RESOL53's building on Lot 1 and that RESOL53 leased the premises formerly occupied by Ray's Pharmacy to Devine's Pharmacy. At one point, there was a Ray's Pharmacy van parked in the lot on Lot 2.

Girish and Ashish had varying accounts of their discussions prior to the sale. According to Ashish, he did not know much about buying commercial property because this was his first purchase of that type. He did not have any conversations with Girish about the parking lot or parking in general. He believed he inspected the building and the parking lot once before buying the property. He never received an email that included the 2012 agreement and was unaware of the agreement, although he did receive from Girish Lot 2's tenant

leases and the 1987 deed. Ashish had a title search completed and he requested information from Girish as part of his due diligence. Ashish did not recall seeing parking signs in the lot.

According to Girish's deposition testimony, in March 2018 he sent Ashish an email that attached the 2012 agreement because they were "talking about the easement" and Girish "told [Ashish] there's some changing in [the] easement" and that he would send Ashish a "copy to memorandum" that was "a new easement that we sign[ed]." However, Girish also confirmed that "there [were no] conversations that led up to [him] sending this email," but he sent the email only because the document was "very important for anybody buying [his] property." However, he also stated that he did not have any conversation with Ashish about the March 2018 email or about the easement agreement, because Ashish saw all of the documents when they first met, and Girish sent the 2012 agreement by email. Although Girish did not know the exact date they met, he recalled that when they did, Ashish asked for "all the paperwork" and Girish gave him the 2012 agreement and other documents, including the leases.

However, Girish received an email from Ashish requesting various documents in May 2018, two months after he sent the March 2018 email. In response, he provided Ashish with all of the documents requested. He could not

recall specifically sending Ashish the 2012 agreement in response to that email, but he did give Ashish whatever Ashish asked him for, although he did not have a copy of his response to Ashish's email. He also testified that in response to the email from Ashish asking for twenty-two documents, Girish gave him the documents in person, but he did not recall when or where that took place. He also did not know if he produced all twenty-two documents at once. Although Girish also stated that he did not remember if he provided the 2012 agreement when Ashish asked for all of the documents, he did with his email in March 2018. However, he had no read receipt or delivery receipt from the March 2018 email.

Moreover, Girish confirmed that "after he showed [Ashish] the paper copy of [the 2012 agreement, he] did [not]follow-up with the email, sending him the copy as well." He also could not remember what conversations he had with Ashish about the 2012 agreement. In addition, Girish believed that Ashish never asked him about restrictions on the parking and could not recall if he ever had any conversation with Ashish about who was allowed to park on the lot. He also did not remember if he sent Ashish any documents after closing the sale of Lot 2, or whether he had conversations with Ashish about restrictive covenants or not being able to run certain businesses in the property either. When asked if in

May 2018 when Ashish asked for information as part of his due diligence, Girish told Ashish that he had already provided that information, Girish stated that he did not know.

The Litigation

After Ashish acquired Lot 2 in 2018, he, Peter, and Carl became embroiled in disputes over parking in Lot 2's parking lot and the towing of automobiles from the lot at Ashish's request. Each party had its own view of the circumstances surrounding those disputes, which at times required police intervention. Carl believed the parking issues arose after Mahendra took ownership of the pharmacy and before Ashish ever bought Lot 2. Ashish testified that the parking issues arose around July or August of 2018, shortly after he purchased Lot 2. However, it is undisputed that the resolution of those disputes turned on whether Ashish was bound by the 2012 agreement as compared to the original 1987 easement.

As a result of those disputes, on March 29, 2019, RRR Newgen filed a complaint in the easement action, seeking a judgment "[d]eclaring that [defendants] are obligated and bound to honor" the 2004 deed, which incorporated the same language as the 1987 deed. The complaint also sought an injunction prohibiting RESOL53 and Peter from using the Lot 2 property,

"namely the parking lot thereon, in any manner inconsistent with the subject [1987] easement," and ordering them to immediately remove the parking signs placed around Lots 1 and 2. RRR Newgen also sought damages and attorneys' fees.

In the complaint, RRR Newgen alleged that defendants had "claimed exclusive right to utilize certain portions of the parking lot," declared certain rows of parking unavailable for plaintiff and that other rows could only be used by employees and posted signs around the parking lot indicating that spots could only be used for certain businesses. RRR Newgen also alleged that Peter had allowed and continued to allow customers from stores other than the pharmacy to use the parking lot, which violated the easement. Defendants answered and filed a counterclaim, seeking a judgment "[c]onfirming the use and responsibilities regarding the adjoining parking lot as set forth in [the 2012 agreement]."

Subsequently, RESOL53 filed a complaint commencing the enforcement action,[6] and in July 2019 amended that pleading, naming Pochi Corporation trading as Ray's Pharmacy, RRR Newgen and Ashish as defendants in that action. In the amended complaint, RESOL53 alleged that the named defendants

---

[6] We have not been provided with a copy of the original complaint.

had knowledge of the 2012 agreement from Ashish's experience working at Ray's Pharmacy while it was RESOL53's tenant, and because of Peter's performance of the obligations under the 2012 agreement, plaintiffs should be estopped from denying it existence and the 2012 agreement should be enforced. The amended complaint alleged that "[d]espite knowing of the restrictions prohibiting a pharmacy from operating Lot 2," Pochi Corporation, RRR Newgen, and Ashish parked a van advertising for Ray's Pharmacy near the entrance to Devine's Pharmacy in the parking lot. The complaint did not mention anything about Girish providing a copy of the 2012 agreement to Ashish.

The complaint also sought enforcement of the restrictive convenant in the 1987 easement that barred the owner of Lot 2 from leasing to a pharmacy. The complaint demanded a judgment enforcing the 2012 agreement, preventing plaintiffs from "operating or advertising competing businesses in Lot 2," barring plaintiffs from harassing RESOL53' employees and tenants and their customers, and awarding fees and costs. The amended complaint also asserted a claim for damages for tortious interference, unclean hands, and breach of the covenant of good faith and fair dealing. RRR Newgen filed an answer, and the case was later consolidated with the easement action.

On May 14, 2020, both RRR Newgen and RESOL53 filed motions for summary judgment in the easement action. RRR Newgen's motion was supported in part by a certification from Ashish. He certified that he obtained a title insurance policy and that a title search was conducted before he purchased Lot 2, which revealed that Lot 2 was "subject to certain easements that were recorded in the chain of title." Specifically, there were four easements—two recorded in 1959, one recorded in 1987, and one recorded in 2004. He also stated that no other easements appeared in the results of the title search. Ashish also certified that prior to the initiation of this lawsuit, he had no knowledge of the 2012 agreement. In addition, he was not an owner of Pochi Corporation and he denied that he ever harassed or interfered with any of the tenants or customers of RESOL53.

Defendants filed their motion for summary judgment and supported their motion in part with an exhibit that consisted of a print-out of an email from Girish to Ashish, sent on March 14, 2018. The email made no mention of the 2012 agreement and only showed that a file designated as "2018-03-12 19-35.pdf" had been attached to the email. However, defendants also included a copy of the 2012 agreement as part of the same exhibit, inferring that it was the document attached to the email. In further support of that contention, as part of

their statement of undisputed material facts, defendants cited to Girish's deposition testimony that he informed Ashish of the 2012 agreement and he provided him with copy of that agreement.

Plaintiffs submitted a certification from Ashish in opposition to defendants' motion for summary judgment. Ashish stated that he did not have any conversations with Girish about the parking lot, and that no one gave him the signed 2012 agreement, until after the litigation began.

On June 5, 2020, the Chancery judge heard oral argument on the motions.[7] During oral argument, the judge rejected defendants' contention that Ashish received and read the 2012 agreement prior to purchasing Lot 2, which gave notice to Ashish of the modifications to the 1987 easement. He rejected the contention that receiving the 2012 agreement would have been notice as well. The judge granted plaintiffs' motion and five days later entered an order memorializing his decision.

In the order, the motion judge dismissed RESOL53's complaint under the enforcement action and defendants' counterclaim in the easement action, declared the 1987 easement to be in "full force and effect as recorded and

---

[7] We note here that in many instances where the Chancery judge is speaking the transcript reads "(Indiscernible)."

unmodified" and that it bound the parties and all subsequent purchasers of Lot 2 regarding their use of Lot 2's parking lot, and that the 2012 agreement had "no force and effect upon and does not govern" the parties' or any subsequent owners' use of the parking lot. The order further barred the 2012 agreement from being recorded but required that the order be recorded.

After the June 2020 order was entered, the parties continued to have disagreements over the parking lot, and the restrictions in the 1987 easement. The disagreements culminated in RESOL53 filing a motion in the enforcement action to enforce litigants' rights against Pochi Corporation, RRR Newgen, and Ashish on August 5, 2020. RESOL53, through certifications from Carl and Peter, alleged that RRR Newgen was violating the easement rights by Ashish having cars towed and directing employees and long-term commuters to park in the lot. In response, RRR Newgen filed a cross-motion for the same relief. The parties' motions were supported by their representatives' certifications, and those from tenants and a towing company detailing how the parties' dispute over the parking rights was causing hostile actions being taken by both sides, including disallowing tenants to park in authorized spaces, harassing tenants, posting of improper parking restrictions, the towing of vehicles, and the "aggressive" interference of those towing operations.

A-3867-19

On August 28, 2020, the Chancery judge heard arguments on the parties' motions and ultimately denied RESOL53's motion, disagreeing with defendants' arguments that the 1987 easement did not limit parking to pharmacy customers and that the deed restricted the Lot 2 owner from allowing employee parking. The judge also concluded that the parking lot could still be used for pharmacy parking, but that Peter had no rights to control the parking lot. According to the judge, Peter "doesn't have any rights anymore. He transferred the corporation. He doesn't have personal rights. He isn't the person who owns the property anymore. He has no rights at all . . . [b]ecause it's the grantor." The judge clarified that he was not ruling "that there is no right for pharmacy parking," but was holding that Peter "has no rights to control."

As to the towing of customer vehicles, the judge did not find that Ashish was violating the easement because RESOL53 did not submit any evidence that pharmacy customer's cars, as compared to other business invitees, were being towed. The judge explained that Peter's certification was not sufficient evidence because he did not have any knowledge of what businesses those customers were patronizing, and RESOL53 did not submit any certifications from customers or tenants saying that their cars were towed. The judge then denied defendants'

A-3867-19

motion to enforce and granted plaintiffs' cross-motion and entered an order memorializing that decision on September 16, 2020.

The order "barred, restrained and otherwise prohibited" Carl and Peter from interfering with the towing of vehicles, instructing or mandating who may park in certain spaces, interfering with signage, and communicating with tenants or customers of Lot 2. The order did allow Peter and Carl to patronize Lot 2 businesses as bona fide customers of any business. These appeals followed.

II.

We review a motion judge's order on summary judgment de novo, applying the same standard as the motion judge. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021). A court will grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Nelson v. Elizabeth Bd. of Educ., 466 N.J. Super. 325, 336 (App. Div. 2021) (quoting R. 4:46-2(c)). Thus, we consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the

non-moving party." Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)).

Here, it is undisputed that in 1987, A&J Enterprise reserved an easement on Lot 2 for its benefit and for its successors in title, subject to certain express conditions as to the use of the Lot 2 parking lot. That recorded reservation therefore established

> [a]n easement appurtenant[, which] is created when the owner of one parcel of property (the servient estate) grants rights regarding that property to the owner of an adjacent property (the dominant estate). . . . The easement appurtenant "enhances the value of the dominant estate and cannot exist separate from the land itself."
>
> [Rosen v. Keeler, 411 N.J. Super. 439, 450 (App. Div. 2010).]

As already noted, the determination of summary judgment in this matter turned on whether RRR Newgen had notice prior to its acquiring Lot 2 of the unrecorded 2012 agreement that modified the 1987 easement. At the outset, we disagree with plaintiffs' contention that as a matter of law, the fact the agreement was unrecorded barred plaintiffs from being charged with notice of the 2012 agreement. New Jersey's Recording Act, N.J.S.A. 46:26A-1 to -12, holds otherwise.

We note that an easement created by grant may be modified by a subsequent agreement and modifications are subject to the recording act. Restatement (Third) of Prop.: Servitudes §§ 7.1, 7.14 (Am. L. Inst. 2000). While it is true that "[a]n unrecorded modification or termination of a recorded servitude is not effective against a subsequent taker of an interest in property burdened or benefited by the servitude who is otherwise entitled to the protection of the recording act," id. at § 7.15, the Recording Act only affords protection to bona fide purchasers who take title without notice of the modification.

The relevant portion of our recording statute, codified at N.J.S.A. 46:26A-12, states in part that "[a]ny recorded document affecting the title to real property is . . . notice to all subsequent purchasers . . . of the document recorded and its contents." N.J.S.A. 46:26A-12(a). The statute also addresses unrecorded documents and states "[a] claim under a recorded document affecting the title to real property shall not be subject to the effect of a document that was later recorded or was not recorded unless the claimant was on notice of the later recorded or unrecorded document." N.J.S.A. 46:26A-12(b) (emphasis added).

"[P]arties are [therefore] generally charged with constructive notice [only] of instruments that are properly recorded," Cox v. RKA Corp., 164 N.J. 487,

496 (2000), unless they have actual notice about an unrecorded encumbrance on the property. See Steiger v. Lenoci, 323 N.J. Super. 529, 537 (App. Div. 1999) (explaining that defendants had actual notice of reciprocal restrictive deed covenant banning "outbuildings" where, within weeks after defendants began building a cabana, plaintiffs notified defendants of the restrictive covenant and their intention to compel compliance); Wolek v. Di Feo, 60 N.J. Super. 324, 330 (App. Div. 1960) ("In the absence of actual knowledge of the sewer easement, or of circumstances sufficient to put them on inquiry and of which they were bound to take notice, they were chargeable only with such facts as might be ascertained with reference to title records."). Such notice can also be established through inquiry notice or constructive notice when the buyer has "knowledge of whatever such an inquiry would uncover where facts are brought to his attention, 'sufficient to apprise him of the existence of an outstanding title or claim, or the surrounding circumstances are suspicious, and the party purposefully or knowingly avoids further inquiry.'" Friendship Manor, Inc. v. Greiman, 244 N.J. Super. 104, 108 (App. Div. 1990).

A subsequent purchaser who has no record notice of a modification to a recorded easement may still be bound by the unrecorded modification if it had actual or constructive notice of the agreement's terms. See Palamarg Realty Co.

A-3867-19

v. Rehac, 80 N.J. 446, 456-57 (1979).  So, "a document that could have been recorded but was not[,] is invalid as against any subsequent purchaser or interest holder who takes without knowledge of the unrecorded document[, but] the unrecorded interest is not void against a later-recorded interest taken with knowledge, actual or constructive, of the unrecorded interest."  PNC Bank v. Axelsson, 373 N.J. Super. 186, 190 (Ch. Div. 2004).  Accordingly, if plaintiffs knew of defendants' 2012 agreement when it took title to Lot 2, the provisions of the Recording Act "would validate the unrecorded easement as against" plaintiffs.  Ibid.  Only, "a purchaser without notice from an owner who has notice is protected."  Palamarg Realty Co., 80 N.J. at 457 n.6 (quoting 3 Pomeroy, Equity Jurisprudence §§ 754, 754a, at 55-61 (5th ed. 1941)).

On appeal, defendants argue generally that Ashish was "on notice" of the modification.  First, they argue that Ashish had actual notice because Girish gave him the 2012 agreement and was told by Girish about the easement modification.  In addition, they appear to rely on a theory of inquiry notice, citing Schwoebel v. Storrie, 76 N.J. Eq. 466 (Ch. 1909), to support their proposition that the Board's resolution "incorporated and referenced" the 2012 agreement and therefore, Ashish should have been put on notice about the 2012 agreement.  Moreover, they argue that because Ashish participated in the

management of Ray's Pharmacy when his father-in-law owned it, he had actual notice of the easement because he used the shared parking lot.

We conclude that the motion record established that a dispute of material fact existed as to plaintiffs' knowledge about the 2012 agreement such that the award of summary judgment was not appropriate.

Ashish's and Girish's testimony regarding their conversations over the sale of Lot 2 varied greatly. Ashish on one hand testified that he was not provided with the 2012 agreement and had no knowledge about its terms from any source. Against that, Girish, plaintiffs' predecessor, testified that he sent the agreement to Ashish, although the actual email on its own did not support his testimony and his description of his conversations about the 2012 agreement and modification were inconsistent. Further, Girish's responses regarding Ashish's request for information as part of his due diligence lack clarity. Girish testified he sent Ashish everything he asked for, then he said he gave him the information hand-to-hand but did not know where or when that took place, and also testified that he did not recall if he sent the 2012 agreement in reply but was sure that he sent everything Ashish asked for.

In sum, Girish, at least in part, testified that he gave or sent the 2012 agreement to Ashish, and spoke to some extent to Ashish about the changes

made to the easement, as Carl also alluded to, thus creating a genuine dispute as to plaintiffs' knowledge. Moreover, it was undisputed that Ashish participated to some extent in the operation of Ray's Pharmacy while it was located in Lot 1's building, during which time its customers enjoyed whatever arrangement had been entered into between Peter and Girish.

Here then, reviewing the evidence in the light most favorable to defendants, the evidence was not "so one-sided that there is only one reasonable outcome." Bosshard v. Hackensack Univ. Med. Ctr., 345 N.J. Super. 78, 90 (App. Div. 2001). Nor was there any evidence that under any undisputed facts plaintiffs were entitled to judgment as a matter of law.

## III.

We reach a different conclusion as to the September 16, 2020 order that construed the 1987 easement's restrictions to only apply to Lot 1 users of the parking and denied relief because Peter "was the Grantor." As to that order, we agree that the easement restriction only pertained to Lot 1's use of the parking lot and not Lot 2 's use of the parking lot. We disagree that, as a representative of the owner, Peter could not seek enforcement of RESOL53's rights to the extent they were being interfered with by RRR Newgen's representatives, if at all.

A-3867-19

26

The parties' dispute focused on the language in the 1987 easement that stated the following:

> Said nonexclusive easement and right of way is limited to short term maximum two-hour parking for customers and shoppers also patronizing the business conducted in the building located on Lot 1, Block 86 . . . provided that such use of said Lot 1 Block 86 is a pharmacy business.
> Said parking lot shall be utilized by customers and shoppers from businesses conducted on said Lot 1, Block 86, provided said use as a pharmacy business, as well as said Lot 2, Block 86. Subject to conditions and limitations set forth herein, this nonexclusive easement and right of way shall run with the land and bind the Grantee, its successors and assigns, in title, possession and its heirs. It is expressly understood and agreed that the parking facility shall not be used or cause to be used for a parking lot for employees or long-term commuter parking.

According to defendants, this language applied to both lots. Plaintiffs disagree and contend that it recited the restriction being placed only on Lot 1's use of their parking lot.

An express easement is a matter of contract between the parties, and it is appropriate to employ contract principles in attempting to ascertain the rights conveyed. Borough of Princeton v. Bd. of Chosen Freeholders, 333 N.J. Super. 310, 324-25 (App. Div. 2000), aff'd, 169 N.J. 135 (2001); Restatement (Third) of Prop Servitudes § 4.1 (Am. L. Inst. 2000).

Questions concerning the extent of the rights conveyed by an easement require a determination of the intent of the parties as expressed through the instrument creating the easement, read as a whole and in light of the surrounding circumstances. . . . [W]hen the intent of the parties is evident from an examination of the instrument, and the language is unambiguous, the terms of the instrument govern.

[Rosen, 411 N.J. Super. at 451 (internal quotation marks and citations omitted).]

See also Tide-Water Pipe Co. v. Blair Holding Co., 42 N.J. 591, 604 (1964) (stating a determination of the rights conferred under a grant of easement depends "on the intent of the parties as expressed in the language of the grant, viewed in the light of the nature and reasonably necessary incidents of the permitted use").

The primary rule of construction is that "the intent of the conveyor is normally determined by the language of the conveyance read as an entirety and in the light of the surrounding circumstances." Khalil v. Motwani, 376 N.J. Super. 496, 503 (App. Div. 2005) (quoting Hammett v. Rosensohn, 26 N.J. 415, 423 (1958)). However, "[w]hen the language of the grant is ambiguous, the surrounding circumstances, including the physical conditions [and character] of the servient tenement and the requirements of the grantee, play a significant role in the determination of the controlling intent." Rosen, 411 N.J. Super. at 451;

see Khalil, 376 N.J. Super. at 503. The court may consider the course of conduct of the parties as evidence of what was intended under the agreement. Savarese v. Corcoran, 311 N.J. Super. 240, 248 (Ch. Div. 1997), aff'd, 311 N.J. Super. 182 (App. Div. 1998). Ambiguities in the easement must be construed against the grantor. Hyland v. Fonda, 44 N.J. Super. 180, 187 (App. Div. 1957). The interpretation should "accord with justice and common sense." Borough of Princeton, 333 N.J. Super. at 325 (quoting Krosnowski v. Krosnowski, 22 N.J. 376, 387 (1956)).

Applying those guiding principles, we discern no ambiguity in the language used by Peter through RESOL53's predecessor in title when it created the easement from which he and his entities benefited. The restriction that RESOL53 now argues was equally applicable to Lot 2 users of the parking was clearly meant to only apply to Lot 1 users. The language employed makes that clear, as does the restriction's placement within the language reserving the easement. Even if there were ambiguities, as defendants argue, they would be construed against Peter and his related entities because although they were the grantor under the 1987 deed, they reserved the rights stated in the easement Peter created for his and their own benefit such that they were to run with land so long as a pharmacy business was being conducted from the Lot 1 building.

We therefore agree with the motion judge that the 1987 easement restrictions on the use of Lot 2's parking lot only applied to the Lot 1 users, and we affirm the September 16, 2020 order to the extent it confirmed the applicability of the restrictions to only Lot 1 users. However, to the extent that the motion judge's order deprived Peter, on behalf of RESOL53, from seeking enforcement of rights as a representative of that entity, we disagree and glean no basis from the motion judge's remarks as to why Peter could not pursue a claim in his representative capacity to seek endowment of RESOL53's rights, albeit not as a named party. Having said that, we concur that Peter, like any other individual involved in this dispute, cannot resort to self-help, in the form of physical confrontations and harassing customers and tenants, in lieu of seeking resolution through the courts if attempts to negotiate a solution fail, or where appropriate, by calling upon local law enforcement to assist.

IV.

In sum, we reverse the June 10, 2020 order that granted plaintiffs' summary judgment, declared that the 2012 agreement was unenforceable against RRR Newgen, and dismissed defendants' counterclaim and RESOL53's enforcement action, and we remand the matters for trial. For the same reasons, we affirm the denial of defendants' motion for summary judgment. We affirm

A-3867-19

30

the September 16, 2020, order to the extent it declared that the 1987 easement restrictions applied only to RESOL53, but we vacate the order to the extent it denied defendants' motion to enforce the 1987 easement. We affirm the order to the extent it granted injunctive relief preventing any individual from taking "self-help" measures to protect their rights, but reverse it to the extent it held, as a matter of law, Peter or Carl could not pursue legal remedies on behalf of RESOL53.

In light of our decision, we do not address any of the parties' remaining arguments to the extent we have not already touched upon them earlier in this opinion.

Affirmed in part; reversed in part; vacated and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3867-19

31